Submitted September 20, reversed and remanded December 1, 2010

ROBERT DUARTE CORTEZ,
aka Robert Duarte Cortes,
*Petitioner-Appellant,*

*v.*

Mark NOOTH,
Superintendent,
Snake River Correctional Institution,
*Defendant-Respondent.*

Malheur County Circuit Court
07116206P; A141418

244 P3d 825

James N. Varner filed the brief for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Cecil A. Reniche-Smith, Assistant Attorney General, filed the brief for respondent.

Before Brewer, Chief Judge, and Edmonds, Senior Judge.

EDMONDS, S. J.

**EDMONDS, S. J.**

Petitioner, in this post-conviction relief proceeding, appeals after the post-conviction court denied relief based on its ruling that petitioner failed to prove that he was prejudiced by his counsel's advice not to testify in the underlying criminal proceeding. We reverse and remand for further consideration by the post-conviction court.

Petitioner was convicted of assault in the second degree in the underlying criminal proceeding resulting from the victim's allegation that petitioner had stabbed him in his upper left arm with a knife after they struggled. Petitioner alleges that he was advised by trial counsel not to testify in the criminal trial because his testimony could have been impeached by a 20-year-old prior criminal conviction. Petitioner's defenses in the underlying criminal case were that he was not present when the victim claimed that petitioner had stabbed him and that the incident described by the victim was a fabrication due to relationships that both of them had with the same woman. According to petitioner, his counsel gave constitutionally inadequate advice because the evidence of his conviction, due to its age, would not have been admissible in evidence.

The post-conviction court did not determine whether petitioner received inadequate assistance of counsel in the criminal trial. Rather, it ruled that, even if petitioner had elected to testify, his testimony would not have likely affected the outcome of the charges against him. Specifically, the court explained:

> "I'm denying post-conviction relief. My reasoning being [petitioner] is telling us that his testimony would be that he doesn't think this man ever got injured, which obviously the jury had already decided the man got injured. And the other thing he would've said is [that] he doesn't know where he was at that time. I am—I do not find, and I realize there's some things that are difficult for him to prove, but under this set of circumstances, I don't think it's that difficult under those potential defenses. I do not find that it is likely that they would have impacted the jury's decision. Other defenses might be different, but not those two. So, I don't

find the testimony that he would've given was likely to change the outcome of the case."

ORS 138.530(1)(a) provides for the grant of post-conviction relief when a petitioner establishes a substantial denial of rights under either the Oregon Constitution or the United States Constitution, or both, that renders the conviction void. The statute places the burden on the petitioner to demonstrate by a preponderance of the evidence that trial counsel failed to exercise reasonable professional skill and judgment resulting in prejudice to the petitioner. *Trujillo v. Maass*, 312 Or 431, 435, 822 P2d 703 (1991). For purposes of the Oregon Constitution, a petitioner establishes prejudice for purposes of the statute by showing that trial counsel's ineffectiveness had a *"tendency to affect the result* of the prosecution." *Lichau v. Baldwin*, 333 Or 350, 359, 39 P3d 851 (2002) (emphasis in original). Likewise, under the federal test, a petitioner must show that his counsel's acts or omissions were not the result of reasonable professional judgment, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 US 668, 687, 690, 104 S Ct 2052, 80 L Ed 2d 674 (1984). Although, on appellate review of a post-conviction judgment, this court is bound by the findings of a post-conviction court if the evidence in the record supports them, the determination of prejudice is a question of law. ORS 138.650(1); ORS 138.220.

The post-conviction court based its ruling on two grounds: (1) that had petitioner testified that the victim faked his injury, the jury would have disbelieved his testimony as evidenced by the fact that it found that the victim had been injured in the absence of his testimony; and (2) that, because petitioner did not remember where he was on the day of the assault, it was not likely that his testimony would have "impacted the jury's decision." The post-conviction court is correct that, in the underlying criminal trial, petitioner questioned whether the victim had faked the injury, and his counsel raised that issue during trial in various ways. However, petitioner also maintained that he was not present at the scene where the victim claimed he had been assaulted.

Assuming that petitioner had taken the witness stand and had testified that he had not been present at the scene, any attempt by him to testify that the victim had faked the stabbing would have been subject to exclusion on the basis of mere speculation. Moreover, the court's reasoning is circular because it is predicated on a fact that the jury ultimately found and not on whether petitioner's testimony would have had a tendency to affect the jury's assessment of the evidence regarding whether the victim had faked his injury. Accordingly, the post-conviction court's ruling is based, at least in part, on incorrect reasoning.

We turn to the post-conviction court's reasoning that the jury would have rejected petitioner's testimony because petitioner did not know where he was at the time of the stabbing. Petitioner gave the following testimony in his deposition:

"Q. Okay. I understand. So this incident supposedly took place on February 12th, 2005. Can you tell me what you were doing when the incident happened?

"A. On that day?

"Q. Yes.

"A. See, that's something that I don't even think my lawyer asked me. No, I can't, honestly. I'm the type of person that if I was outside, you could ask me what I was doing two days ago and I won't even tell you. Yeah, here I can tell you because it's—we do the same thing every day by day.

"But—yeah, but I'm that type of person that just does— no. And then we're talking about first time I heard it was from a guy that called me for mechanical work. Right. He tells me this. He's joking around. And then I heard it from my best friend, like I said. I didn't get—I didn't get busted or caught or whatever until months later, so going back to that date, no, I honestly don't.

"Q. So just to clarify, you remember nothing of the day of February 12th, 2005?

"A. No.

"Q. Okay.

"A.   I mean, I couldn't tell you where I was at unless it was some, you know, holiday or something or something special, birthday or something. I couldn't tell you.

"Q.   Okay. Were you in Marion County that day? Do you know that much?

"A.   Yes. That I was.

"Q.   Okay.

"A.   Because one of the witnesses that said that he had seen me there in St. Paul, Oregon, which is a small town, he said he seen me that day. So, yeah, I believe him. I know the guy. I've worked with him and he's real honest, so, yeah."[1]

There were no eyewitnesses to the alleged assault of the victim by petitioner. The investigating police officer never saw the victim's injury. A witness testified that the victim came into a store claiming that he had been assaulted by petitioner and then was taken to a hospital for medical treatment by the witness. At trial, petitioner's counsel challenged the credibility of the victim, pointing out discrepancies between his testimony at trial and his initial report of the incident. He also impeached the victim's testimony by showing that the victim had previously been convicted of multiple crimes and that there was "bad blood" between the victim and petitioner over the victim's girlfriend. When the state called the witness who came to the aid of the victim and took him to the hospital, counsel cross-examined, eliciting testimony that the gash or puncture wound on the victim's arm was minor and that the victim's testimony that he had been working with the witness at the time was false. Petitioner's trial counsel also called two witnesses who testified that the victim had a reputation for stretching the truth and that no one in their community trusted him.

■     Defendant argues that, in light of the above circumstances, the post-conviction court correctly concluded that petitioner did not prove that he was prejudiced by trial counsel's advice. In defendant's view, the above record makes it

---

[1] According to petitioner's deposition testimony, St. Paul is a farm community of approximately 300 people. Petitioner does not dispute that, earlier in the day, a witness observed him in St. Paul, but does dispute that he was there at the time that the victim reported he had been stabbed by petitioner.

clear that a jury would not have found petitioner credible. We are not persuaded by defendant's argument. We observe that the state had the burden in the underlying criminal proceeding of proving beyond a reasonable doubt that petitioner committed the assault by overcoming the presumption that defendant was innocent. Petitioner is required in this post-conviction relief proceeding to prove by a preponderance of the evidence that he was prejudiced by trial counsel's advice in light of the state's burden in the criminal trial. Unlike the post-conviction court, we do not view the failure of petitioner to recall where he was on the day of the assault as fatal to his burden of proof. If petitioner's testimony is to be believed, he did not learn of the assault until sometime after it occurred. A reasonable trier of fact could find that it would not be unusual for a person not to recall where the person was on a particular day at a particular time in the absence of a circumstance or event that would imprint that time period in the person's memory. Had petitioner testified, the jury would have been able to assess the credibility of both individuals in light of conflicting evidence regarding the victim's veracity.

Under all of the above circumstances, we conclude that, if trial counsel acted unreasonably, then we cannot say as a matter of law that petitioner's testimony would not have had a tendency to affect the outcome of the underlying criminal trial. Because the post-conviction court did not reach the issue of whether, in fact, petitioner received constitutionally inadequate assistance of counsel, the court on remand is to decide that issue.

Reversed and remanded.