On appellant Hale's petition for reconsideration filed April 3, and respondent Belleque's response to appellant's petition for reconsideration filed April 10; on respondent's petition for reconsideration filed April 10, and appellant's response to respondent's petition for reconsideration filed April 11, reconsideration allowed; former opinion (255 Or App 653, 298 P3d 596) adhered to September 25, petition for review denied December 12, 2013 (354 Or 597)

## CONAN WAYNE HALE,
*Petitioner-Appellant,*

*v.*

## Brian BELLEQUE,
Superintendent, Oregon State Penitentiary,
*Defendant-Respondent.*

Marion County Circuit Court
04C13562; A143075

312 P3d 533

Daniel J. Casey for appellant's petition and response.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, for respondent's petition and response.

Before Wollheim, Presiding Judge, and Haselton, Chief Judge, and Nakamoto, Judge.

WOLLHEIM, P. J.

## WOLLHEIM, P. J.

The state and petitioner have each filed petitions for reconsideration of this court's decision in *Hale v. Belleque*, 255 Or App 653, 298 P3d 596 (2013), in which we determined that petitioner is entitled to post-conviction relief on two charges of first-degree burglary, but otherwise upheld petitioner's convictions, including convictions for aggravated murder. We write to address each party's contention, but adhere to our opinion.

At the end of the guilt phase of petitioner's trial, the jury was instructed that a person who aids and abets another in committing a crime, "in addition to being a person criminally responsible for the crime that is committed, is also criminally responsible for any act or other crime committed as a natural and probable consequence of the planning, preparation, or commission of the intended crime." Petitioner's trial counsel did not object to that instruction, and petitioner's appellate counsel did not challenge it on direct appeal.

In his petition for post-conviction relief, petitioner did not challenge the "aid and abet" instruction, the "natural and probable consequences" aspect of the "aid and abet" instruction, or his trial or appellate counsel's failure to object to the instruction. However, in his seventh claim for post-conviction relief, petitioner asserted that trial counsel was inadequate in failing to object to jury instructions that "did not specify that Petitioner was being tried as an accomplice, a status which involves a different or additional requirement of proof, such as specific intent to facilitate the commission of the crime by another." The post-conviction court rejected that claim, finding that the jury had been correctly instructed on criminal liability for the conduct of another, pursuant to ORS 161.150 and ORS 161.155.

Petitioner did not challenge the post-conviction court's ruling in his opening brief on appeal, despite the fact that, before the brief was filed, this court had decided *State v. Lopez-Minjarez*, 236 Or App 270, 286-88, 237 P3d 233, *adh'd to on recons*, 237 Or App 688, 240 P3d 753 (2010), *aff'd in part and rev'd in part*, 350 Or 576, 260 P3d 439 (2011), and

had held that giving a "natural and probable consequences" instruction is erroneous. However, in his supplemental *pro se* brief, petitioner contended that trial counsel was inadequate in failing to object to "the accomplice instructions [that] allowed a confusion of theories and intents." Then, in a memorandum of supplemental authority, post-conviction appellate counsel asserted that petitioner's convictions should be reversed under the Supreme Court's opinion in *Lopez-Minjarez*, 350 Or 576, 260 P3d 439 (2011), which had affirmed this court's decision disapproving of a "natural and probable consequences" instruction like the one the trial court gave in this case.

In our original opinion, we gave petitioner the benefit of the doubt and assumed for the purpose of discussion that the seventh claim of the post-conviction petition had raised an inadequacy of counsel claim on the basis of the "natural and probable consequences" instruction, but we rejected the contention that counsel had been inadequate, explaining that, until this court's opinion in 2010 and the Supreme Court's opinion in 2011, the Uniform Criminal Jury Instruction given by the trial court on accomplice liability was a correct statement of the law, and the failure of trial counsel to object to it was a reasonable exercise of professional skill and judgment. 255 Or App at 686.

We further concluded that, assuming that trial counsel had been inadequate in failing to object to the instruction, there was no prejudice, "in view of evidence that petitioner was the primary actor, as described in the Supreme Court's opinion affirming the death sentence." *Id.* at 687.

Petitioner's petition for reconsideration relates only to the "natural and probable consequences" instruction. Petitioner asserts that we erred in failing to address his challenge to the post-conviction court's rejection of his "standalone" challenge to the instruction. Petitioner contends that an allegation in his fifth claim for post-conviction relief can be understood to have raised a stand-alone challenge to the instruction. As pertinent, the full allegation of the fifth claim was that

"[c]ourt and Counsel deprived Petitioner of his rights under Article I, Section 11 of the Oregon Constitution and the Fifth, Sixth and Fourteenth Amendments of the United

States Constitution, when the following errors concerning jury instructions were made:

"* * * * *

"[T]he jury was confused by the instructions on parties responsible for the crime and/or aiding and abetting when they found the Petitioner responsible for the crimes because he did not get the victims help.

"Taken separately or together, each instance of error in the jury instructions as well as the failure to dismiss counts 20, 21, 27, 29, 35 and 37, caused confusion of the jury and resulted in a denial of due process and a fair trial as well as the guarantee of proof beyond a reasonable doubt as set forth in Article I, Sections 11 and 12 of the Oregon Constitution[] and the Fifth, Sixth and Fourteenth Amendments to the United States Constitution."

In petitioner's view, that allegation was sufficient to raise a stand-alone challenge to the "natural and probable consequences" instruction. The state disputes petitioner's description of the allegation's significance. The state asserts that petitioner's argument to the post-conviction court shows that the allegation about jury "confusion" was not based on legal error in any specific instruction, but on the court's giving of an "aid and abet" instruction instead of an "accomplice liability" instruction.[1]

Although, in our original opinion, we assumed for purposes of discussion that the allegation of petitioner's seventh claim could be understood to raise an inadequacy of counsel challenge based on a failure to object to the "natural

---

[1] In his post-conviction trial memorandum, petitioner's counsel explained that, although the state's declared theory was accomplice liability, "[t]he jury was not informed of this during instructions, but was given an 'aid and abet instruction.'" Further, petitioner complained that the court had failed to instruct the jury that it must agree unanimously on the accomplice theory or the direct perpetrator theory. *But see State v. Phillips*, 242 Or App 253, 255 P3d 587 (2011), *rev allowed*, 351 Or 586 (2012) (hitting the victim and actually facilitating the attack on the victim were merely alternative methods of meeting one of the elements of third-degree assault). Petitioner additionally asserted that the jury was not instructed on the meaning of a sex abuse charge and that that error tainted the jury's consideration of the rest of the charges, even though the Court of Appeals ultimately vacated the sex abuse charge. Petitioner asserted that the jury did not understand the instructions or its job to determine unanimously each of the elements. Citing one juror's post-conviction testimony, petitioner argued that the jury convicted him because he did not get help for the victims.

and probable consequences" instruction, we decline petitioner's invitation to make the assumption, based on the allegation of the fifth claim, that petitioner raised a stand-alone challenge to the same instruction. As we stated in our original opinion, this court cannot grant relief on a claim that was not alleged in the petition and was not actually litigated before the post-conviction court. Any argument that is not made to the post-conviction court in support of a claim will not be considered on appeal. 255 Or App at 660; *see Pratt v. Armenakis*, 199 Or App 448, 453-55, 112 P3d 371, *adh'd to on recons*, 201 Or App 217, 118 P3d 821 (2005), *rev den*, 340 Or 483 (2006) (court will not consider new substantive claim raised for first time on appeal).

Petitioner's seventh claim could, generously, be read as raising the challenge that counsel was inadequate in failing to object to jury instructions that "did not specify that Petitioner was being tried as an accomplice, a status which involves a different or additional requirement of proof, such as specific intent to facilitate the commission of the crime by another." That allegation highlighted the specific issue that the Supreme Court in *Lopez-Minjarez* found faulty with the "natural and probable consequences" instruction—the incorrect disregard of the requirement of ORS 161.155 that a person who aids and abets act "[with] the intent to promote or facilitate the commission of the crime." *Lopez-Minjarez*, 350 Or at 582. The same cannot be said for the allegation of the fifth claim—that "the jury was confused by the instructions on parties responsible for the crime and/or aiding and abetting when they found the Petitioner responsible for the crimes because he did not get the victims help." Whatever its intended focus, that allegation did not make any point about the intent requirement for aiding or abetting or accomplice liability. Further, in the post-conviction court, petitioner did not raise any challenge to the "natural and probable consequences" instruction, and the post-conviction court did not address any contention about that instruction. Petitioner's opening brief in this court did not assert any assignment of error based on that instruction and neither did petitioner's *pro se* supplemental brief raise a stand-alone challenge, despite the fact that this court's opinion in *Lopez-Minjarez* had long before been decided. Petitioner's contention, made

for the first time in his supplemental memorandum of additional authority—in a single sentence asserting that *Lopez-Minjarez* requires reversal of petitioner's convictions—comes too late.[2] We therefore reject petitioner's contention in his petition for reconsideration.

We turn to the state's petition. The state complains that, in determining that petitioner was prejudiced by the trial court's failure to give an instruction under *State v. Boots*, 308 Or 371, 780 P2d 725 (1989), *cert den*, 510 US 1013 (1993), this court applied an incorrect legal standard for assessing prejudice. In the alternative, in light of the determination of prejudice, the state asserts that the correct relief would be a remand for a reassessment of prejudice in light of *State v. Frey*, 248 Or App 1, 273 P3d 143 (2012), which, incidentally, the state asserts was wrongly decided.

The state's primary contention is that petitioner has failed to establish prejudice, because petitioner has not presented any evidence to establish that it was likely that the jury's verdicts in the two burglary charges were less than unanimous or any evidence that he suffered any actual prejudice. Rather, the state asserts, petitioner has merely shown a theoretical possibility that some of the verdicts were less than unanimous, and that is not sufficient to establish prejudice in the context of post-conviction relief, as opposed to direct appeal. The state asserts that it is patent that petitioner could not possibly have suffered any prejudice if all the verdicts on the burglary, theft, and criminal-mischief charges were unanimous, and petitioner's prejudice contention is dependent on the "bare *assumption* that the verdicts might have been less than unanimous. But he did not present *any evidence* [in] the post-conviction proceeding to establish that essential fact, and he did not present any evidence to establish that that was even *likely—i.e.*, a preponderance of the evidence." (Emphasis in state's brief.) The state continues, "All that petitioner presented in support of

---

[2] After addressing petitioner's contention that trial counsel had been inadequate in failing to object to a "natural and probable consequences" instruction, petitioner alleged in the last sentence of his memorandum of additional authorities that, "[a]lternatively, under the rationale of *Lopez-Minjarez*, that instruction on its own violated petitioner's * * * right to due process and a fair trial under Article I, section 11, and the Fifth, Sixth, and Fourteenth Amendments."

his claim was a bare—and far-fetched—theoretical possibility of prejudice that was not based on the actual evidence in this case."

We understand the state's contention to be that prejudice—in the context of inadequate assistance of counsel—cannot be established based on counsel's failure to object to the failure to give a proper concurrence instruction, without some evidence showing that it was likely that the jury convicted on a less than unanimous verdict. That is incorrect. As we held in *Bogle v. Armenakis*, 172 Or App 55, 64, 18 P3d 390 (2001)—a post-conviction case—uncertainty in whether the jury convicted the defendant without agreeing on the elements of the offense charged in each count is prejudicial, in the context of post-conviction relief, because the failure to give a proper concurrence instruction has a tendency to affect the result of the prosecution. 172 Or App at 61-62.[3] We

---

[3] In *Bogle* we explained how the failure to give a proper concurrence instruction caused the petitioner prejudice that required post-conviction relief:

"The Supreme Court has identified two circumstances in which a material instruction that is erroneous is not harmful to the defendant. First, if the error is cured by another instruction, no prejudice results. *See State v. Williams*, 313 Or 19, 38, 828 P2d 1006 (1992) (holding that, for an instruction to constitute reversible error, it must have prejudiced the accused when the instructions are viewed as a whole). Second, if the court can ascertain that the jury properly found the necessary facts despite misinstruction, no prejudice results. *See State v. Rose*, 311 Or 274, 810 P2d 839 (1991) (concluding that no prejudice resulted from an erroneous instruction where the jury completed a special verdict form and jurors individually answered post-verdict questions confirming correct fact-finding). Defendant argues that the court's general instruction to the jury that 'ten or more must agree on each of your verdicts on each count,' cured any error in the kidnapping instruction. We disagree. The general instruction did not inform the jury which facts it must agree on in order to convict petitioner of any of the charges. Nor is there any evidence that the jury found the necessary facts to convict petitioner of any of the charged offenses. The verdict form referred to each kidnapping count without differentiating among the elements charged for each, and the jurors were not polled as to their findings on the necessary elements. Moreover, as noted, the jury was never advised of the specific charges contained in the indictment.

"The jury did unanimously convict petitioner on all four kidnapping counts. However, without separate instructions on each kidnapping charge, the jury could have decided unanimously to convict petitioner of kidnapping in any combination of six ways not alleged in the indictment. The instruction given permitted the jury to convict petitioner of kidnapping: (1) Jackson by moving her with the purpose of terrorizing Fijalka; (2) Jackson by confining her with the purpose of terrorizing Fijalka; (3) Fijalka by moving him with the purpose of terrorizing Jackson; (4) Fijalka by confining him with the purpose of terrorizing Jackson; (5) Fijalka by moving him with the purpose of terrorizing him; or (6) Jackson by confining her with the purpose to physically injure her.

therefore reject the state's contention that there has been no showing of prejudice. Finally, we reject the state's contention that the proper remedy is a remand for the post-conviction court to redetermine the question of prejudice, which can be determined in this case as a matter of law. *See Cortez v. Nooth*, 239 Or App 294, 297, 244 P3d 825 (2010); *Ashley v. Hoyt*, 139 Or App 385, 395 n 2, 912 P2d 393 (1996) (on post-conviction, the existence of prejudice is a question of law that may be dependent on predicate facts).

Reconsideration allowed; former opinion adhered to.

---

Each of those situations would, if found by the jury, result in a conviction, even though none of them was alleged in the indictment. In short, we cannot tell whether any of the four convictions was based on the offenses alleged in the indictment. Because that uncertainty 'had a tendency' to affect the prosecution, petitioner established prejudice. *See State v. Thiehoff*, 169 Or App 630, 10 P3d 322 (2000) (remanding for resentencing where '[g]iven the jury's general verdict, we have no way of knowing' whether jury properly found aggravating facts or followed erroneous instruction). Therefore, he is entitled to relief from the kidnapping convictions."

172 Or App at 64-65.