Argued and submitted September 6, 2013, affirmed March 18, 2015

MARTIN ALLEN JOHNSON,
*Petitioner-Appellant,*

*v.*

Jeff PREMO,
Superintendent,
Oregon State Penitentiary,
*Defendant-Respondent.*

Marion County Circuit Court
09C17860; A150451

346 P3d 686

Jason L. Weber argued the cause and filed the brief for appellant. Martin Allen Johnson filed the supplemental brief *pro se.*

Jeremy C. Rice, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Wollheim, Senior Judge.*

HASELTON, C. J.

_____

* Haselton, C. J., *vice* Schuman, S. J.

## HASELTON, C. J.

Petitioner seeks reversal of a judgment denying his claims for post-conviction relief relating to his convictions for various sex offenses in Multnomah County. Petitioner's claims pertain to the alleged inadequate assistance of counsel by his multiple trial attorneys and his appellate counsel, including the alleged waiver of his speedy trial rights without his consent and the alleged failure, in the context of his conditional guilty plea, to ensure that various pretrial rulings could be reviewed on appeal pursuant to ORS 135.335(3). We affirm.

The circumstances material to our analysis and disposition are uncontroverted. In early 1998, after petitioner became aware that he was the target of a Washington County homicide investigation, he fled the state. Shortly thereafter, authorities learned that petitioner may have committed sexual offenses in Multnomah County. Consequently, on May 8, 1998, petitioner was indicted in Multnomah County for one count of rape in the first degree, ORS 163.375, one count of sexual abuse in the first degree, ORS 163.427, five counts of rape in the third degree, ORS 163.355, three counts of sodomy in the third degree, ORS 163.385, and two counts of using a child in a display of sexually explicit conduct, ORS 163.670.[1]

Meanwhile, the Washington County homicide investigation had continued, ultimately leading to an indictment against petitioner in that county on a charge of aggravated murder. Petitioner eventually was apprehended in Florida. On March 4, 1999, the authorities returned petitioner to Oregon to face trial on the Washington County aggravated murder charge, and petitioner was lodged in jail in Washington County.

On December 19, 2000, petitioner filed a speedy trial notice in Multnomah County, asserting that he first became

---

[1] Roughly a month before the Multnomah County indictment, petitioner had been indicted for sexual offenses in Clackamas County. The Clackamas County prosecution was the subject of *State v. Johnson*, 339 Or 69, 116 P3d 879 (2005), in which the Oregon Supreme Court reversed petitioner's convictions, concluding that the trial court had erroneously denied his statutory speedy trial motion to dismiss, pursuant to *former* ORS 135.747 (2011), *repealed by* Or Laws 2013, ch 431, § 1.

aware of the Multnomah County charges in October 2000. On January 10, 2001, he was arraigned on the Multnomah County charges.

On January 12, 2001, Hart was appointed as petitioner's counsel on the Multnomah County charges, and, on February 1, Hart filed a 60-day speedy trial waiver[2] and a 90-day speedy trial waiver[3] on petitioner's behalf. Petitioner signed both of the waivers. Soon thereafter, petitioner tried to contact Hart with instructions to withdraw his waivers. Whether Hart was aware of those instructions at the time is unknown,[4] but Hart withdrew as counsel of record in March 2001, and another attorney in Hart's law office, Kohlmetz, became petitioner's counsel.

Kohlmetz and petitioner's counsel on the still-pending Washington County charges, Peters, conferred about continuing the Multnomah County case until the Washington County case had been concluded. Kohlmetz stated that he was informed "that all parties were working towards a universal resolution of all pending charges against [petitioner], and * * * that it would be to [petitioner's] benefit to litigate the [Washington County case] first." Although Kohlmetz

---

[2] ORS 136.290 provides:

"(1) Except as provided in ORS 136.295, a defendant shall not remain in custody pending commencement of the trial of the defendant more than 60 days after the time of arrest unless the trial is continued with the express consent of the defendant. Absent the consent of the defendant or an extension under ORS 136.295, the court shall order that the trial of the defendant commence within 60 days after arrest if the state is prepared to proceed to trial.

"(2) If a trial is not commenced within the period required by subsection (1) of this section, the court shall release the defendant on the own recognizance of the defendant, or in the custody of a third party, or upon whatever additional reasonable terms and conditions the court deems just as provided in ORS 135.230 to 135.290."

[3] ORS 135.763 provides:

"(1) The district attorney, after receiving a notice requesting trial under ORS 135.760, shall, within 90 days of receipt of the notice, bring the inmate to trial upon the pending charge.

"(2) The court shall grant any reasonable continuance with the consent of the defendant. Notwithstanding the defendant's lack of consent, the court may grant a continuance on motion of the district attorney or on its own motion, for good cause shown. The fact of imprisonment is not good cause for the purposes of this subsection."

[4] Neither the criminal trial court nor the post-conviction court rendered a finding on that matter.

had not personally met with petitioner, he understood from his conversations with Hart and Peters that petitioner had agreed to a postponement of the Multnomah County case until the Washington County case was resolved.[5]

After Kohlmetz withdrew as counsel in July 2001, the court appointed Ludwig to represent petitioner. Thereafter, except for the period between October 2001 and May 2002, when petitioner represented himself, Ludwig acted as petitioner's Multnomah County trial counsel.

During the period in which he represented himself, petitioner filed over 140 motions with the court,[6] one of which was a motion to dismiss the charges for violation of petitioner's statutory speedy trial rights pursuant to *former* ORS 135.747 (2011), *repealed by* Or Laws 2013, ch 431, § 1, and his state and federal constitutional rights to speedy trial.[7] In May 2002, the court held an omnibus hearing on many of the motions, including the speedy trial

---

[5] There is conflicting evidence regarding petitioner's agreement to the delay. Although two of petitioner's trial attorneys testified that petitioner was aware of the reasons for delaying the Multnomah County case and was in "full agreement" with resolving the Washington County case first, there is also evidence that petitioner objected to the speedy trial waivers. In making its factual findings, the post-conviction court did not resolve which evidence was more credible.

[6] The criminal trial court stated that petitioner had filed more than 140 motions. Some of the motions were handwritten and some were typed. The trial court, in fact, denied some of petitioner's motions on the ground that they were incomprehensible. In ruling on a motion to suppress, for example, the trial court stated:

"I am unable to determine whether there was a search or whether there were any items seized that are going to be used by the State in this case. It is so generic in its description. *** I'm simply unable to determine what it is that you are seeking to suppress."

The trial court described some of petitioner's motions as "captur[ing] sundry comments from case law[, but having] absolutely no bearing on [petitioner's case.]" The trial court also noted that some of petitioner's motions were "simply downloaded forms that [petitioner had] accessed through a computer *** and which have no applicability to [petitioner's] case."

[7] *Former* ORS 135.747 provided that an accusatory instrument must be dismissed if it is not "brought to trial within a reasonable time" unless the trial has been "postponed upon the application of the defendant or by consent of the defendant."

Article I, section 10, of the Oregon Constitution provides that "justice shall be administered *** without delay." The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."

motion.[8] Petitioner presented evidence and arguments on the motions; more than one day was spent on the speedy trial motion alone. The trial court concluded that petitioner had not been denied his statutory or constitutional rights to a speedy trial and denied his motion to dismiss. The trial court eventually denied all of petitioner's other motions as well, except for his motion, added near the end of the hearing, to reappoint Ludwig as his attorney.

On the day of petitioner's trial, petitioner asked the trial court to remove Ludwig as his attorney, because, among other things, he did not trust her to follow his requests. Petitioner stated, "I've had problems trusting attorneys and getting attorneys to file motions[.]" The trial court denied his motion.

Thereafter, petitioner, Ludwig, and the prosecutor discussed resolving the case through a plea agreement. The state offered petitioner two separate plea agreements. Under the first, petitioner could enter a conditional plea of "no contest" and reserve his right to appeal his pretrial rulings pursuant to ORS 135.335(3), which provides:

"With the consent of the court and the state, a defendant may enter a conditional plea of guilty or no contest *reserving, in writing, the right, on appeal from the judgment, to a review of an adverse determination of any specified pretrial motion.* A defendant who finally prevails on appeal may withdraw the plea."

(Emphasis added.) Under the second option, petitioner would simply enter a plea of no contest, ORS 135.335(2).[9] The former choice included a longer prison sentence than the latter. Petitioner agreed to enter the conditional plea, and signed

---

[8] The trial court separated the types of motions into several broad categories: "motions against the indictment, motions to dismiss, motions to dismiss that relate specifically to his assertion that he has been denied a speedy trial, motions for discovery and/or access[,] *** [m]otions to suppress, motions in limine, motions to sever the charges, and a number of miscellaneous motions, *** motions against Measure 11 *** and *** motions for return of things seized."

[9] ORS 135.335(2) provides:

"A defendant may plead no contest only with the consent of the court. Such a plea shall be accepted by the court only after due consideration of the views of the parties and the interest of the public in the effective administration of justice."

the plea agreement form, crossing out those portions of the terms that indicated that he had received adequate legal representation, and alerting the court that he intended to file a bar complaint against Ludwig.

The trial court held a hearing to ascertain the terms of the agreement and to confirm that petitioner's consent to the agreement was voluntary and knowing. The parties also agreed to the trial court's following explanation of the agreement:

> "[T]he negotiations have resulted in what is presented to me as a conditional petition to plead no contest and waiver of jury trial. I understand this is being submitted pursuant to the statute which permits a conditional plea *so that all pre-plea hearings, motions and rulings will be part of the record that goes up on appeal and that [petitioner] will be able to seek an appellate remedy or other post judgment remedy and there will be a complete record of * * * all of that.*
>
> "That if for some reason the significant rulings were reversed the conditional plea would go away and we'd start all over again. If, on the other hand, his appeal is unsuccessful, the petitions would become less conditional, more final, and we would proceed."

(Emphasis added.)

Of paramount concern to petitioner was that *all* the rulings on his motions be included in the record, so that he could raise them on appeal. At sentencing, he again raised this concern to the court, asking the court to assist him in retrieving numerous records pertaining to his motions, and even asking the court how to preserve his motions in which the trial court had not made rulings. The trial court directed him to speak to Ludwig, and, "as soon as [her] time ends, you can talk to your appellate lawyer about that."

The conditional plea as entered did not identify in writing any of the pretrial rulings that petitioner wished to appeal.

Petitioner's appellate counsel, Ledesma, filed a notice of appeal from the Multnomah County judgment and subsequently filed a brief raising a single assignment of error, *viz.*, that the trial court had erred in denying petitioner's

speedy trial motion. The gravamen of the argument was that petitioner was entitled to dismissal under *former* ORS 135.747, because the 22-month delay between petitioner's return to Oregon and his arraignment in Multnomah County was unreasonable,[10] and, further, that he had never consented to the waivers that Hart had submitted on his behalf, nor consented to the delays requested by both Hart and Kohlmetz. The brief also raised related constitutional speedy trial arguments under both Article I, section 10, and the Sixth Amendment. Petitioner filed a supplemental *pro se* brief as well, asserting 24 assignments of error, some of which pertained to rulings that the trial court had made, including the speedy trial ruling, some of which pertained to various complaints about the way the criminal investigation and pretrial hearings had proceeded, and some of which pertained to the asserted deficiencies of his various attorneys.

In its response to both briefs, the state argued that the assignments of error raised in both the principal appellate brief and the supplemental *pro se* brief were nonreviewable, because the conditional plea had not—as required by ORS 135.335(3)—*specified in writing* any pretrial rulings for which petitioner reserved a right of appellate review. Alternatively, the state argued that the 24 assignments of error in petitioner's *pro se* brief were nonreviewable, because they "violate[d] a number of rules of appellate procedure, such that review of [petitioner's] claims is difficult, if not impossible." Additionally, the state argued that the trial court did not err in denying petitioner's speedy trial motion. We affirmed the appeal without opinion. *State v. Johnson,* 219 Or App 546, 183 P3d 246 (2008), *rev den,* 346 Or 258 (2009).

---

[10] Although the appellate brief in the Multnomah County case was filed before the Supreme Court's decision in *Johnson,* 339 Or 69, reversing the judgment in petitioner's Clackamas County case, the arguments in that brief pertaining to the 22-month period between petitioner's return to Oregon and his arraignment in Multnomah County paralleled those addressed in *Johnson, viz.,* that the 21-month period of delay between petitioner's return to Oregon and his arraignment on the Clackamas County charges was unreasonable under *former* ORS 135.747. As noted, 269 Or App at 688 n 1, the Supreme Court in *Johnson* concluded that, because that period of delay was unreasonable, defendant was entitled, pursuant to *former* ORS 137.747, to dismissal of the Clackamas County charges. 339 Or at 95.

Petitioner subsequently initiated this action for post-conviction relief. The operative pleading filed by petitioner's counsel was entitled "Second Amended Petition for Post-Conviction Relief" (amended petition). In addition, petitioner filed approximately 22 "*pro se* motion pleadings."[11]

The amended petition alleges that petitioner was denied his right to adequate assistance of trial and appellate counsel under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution,[12] and that the state engaged in misconduct by breaching its plea agreement with petitioner.[13] The claims of inadequate assistance of counsel, which are the focus of our review that follows, are that (1) trial counsel Ludwig failed "to take reasonable steps to ensure that petitioner's pleas conformed to the requirements of ORS 135.335(3), [and, as a result,] there is a reasonable probability that the Oregon Court of Appeals did not review [petitioner's] assignments of trial court error"; (2) appellate counsel Ledesma "failed to file or otherwise take reasonable steps to ensure filing of a motion requesting that the trial court issue amended judgments of conviction which conformed to the requirements of ORS 135.335(3)"; and (3) trial counsel Hart and Kohlmetz improperly waived petitioner's 60- and 90-day speedy trial rights and otherwise delayed petitioner's trial without his consent, and the delays were in violation of his statutory and constitutional speedy trial rights. The amended petition alleged that petitioner was entitled to, variously, a determination that his Multnomah County convictions were "void

---

[11] The post-conviction court stated in its findings of fact:

"Petitioner sent hundreds of pages to this Court, and attempted to have 1650 pages of additional *pro se* writings incorporated by reference into the [amended petition]."

Although petitioner's 22 *pro se* motions were entered in the record, the evidence and argument presented at the post-conviction hearing pertained primarily to the amended petition.

[12] Article I, section 11, provides, in pertinent part, that, "[i]n all criminal prosecutions, the accused shall have the right *** to be heard by *** counsel." The Sixth Amendment provides, in pertinent part, that, "[i]n all criminal prosecutions, the accused shall enjoy the right *** to have the Assistance of Counsel for his defence."

[13] On appeal, petitioner does not raise any assignments of error pertaining to the breach of contract claim.

and without further force and effect," a new appeal, and a remand for "further proceedings" in the Multnomah County criminal case.

In litigating those claims, petitioner presented the entire record of the Multnomah County criminal proceedings, and the briefs and other submissions on direct appeal, as well as testimony from Kohlmetz and Ludwig and from petitioner himself. With respect to the specifications pertaining to the conditional plea agreement and the ensuing appeal, petitioner's counsel explained:

"[Petitioner] entered an agreement with the prosecution and that agreement was a conditional plea agreement wherein he would be entitled to raise *all* of these various— *the denial of his motions and all of these complaints and he was doing—his behavior was relatively similar, from my perspective, to what has taken place in this case, a motion blizzard, one after the other, thousands of pages, and the idea was that the Court of Appeals would be able to then look at what the trial court did and sort it all out. [Petitioner] entered that deal.* The Court was in agreement with it, his attorney was in agreement with it.

"* * * * *

"* * * [I]f Your Honor reads through the transcripts of these trial proceedings, it is just painfully clear that what [petitioner] is doing at every step of the way is attempting to preserve rights, just what he's done here by filing mass[ive] amounts of paperwork. *So it's easy to infer that the whole purpose[or] the critical central purpose of this plea agreement from his perspective * * * was the opportunity to be able to appeal these issues that he had preserved or raised.*"

(Emphasis added.)

With respect to petitioner's asserted entitlement to relief based on Hart's and Kohlmetz's alleged default relating to the 60- and 90-day waivers and other conduct pertaining to speedy trial provisions, petitioner contended that, although petitioner had originally signed the waivers, his attorneys unreasonably failed to effectuate his immediate desire to rescind those waivers. Petitioner further contended that, between the time Hart was appointed as his counsel in January 2001 and the time that Kohlmetz withdrew as

counsel in July 2001, the two attorneys had unreasonably, and without his consent, undertaken conduct, or acquiesced in conduct, designed to delay trial in Multnomah County pending the outcome of the aggravated murder prosecution in Washington County.

The state countered that, with respect to the conditional plea-related claims, petitioner contended that counsel was obligated to reserve *all* of petitioner's more than 140 pretrial motions for appellate review without any differentiation among those matters and without any coherent explanation as to how, or why, any particular ruling would have been reversed on appellate review:

> "I'll bet you even today, [petitioner] would not specify three issues, five issues, 15 issues. He would not be discrete, there's nothing in [petitioner's counsel's] pleadings. * * * [W]hat essentially [petitioner] wants to do is have a plea agreement and then litigate everything he talked about in a fully discursive and vague way in the trial court and dump that all on the Court of Appeals."

The state further contended, with respect to the waiver and speedy trial matters, that counsel's actions were within the range of permissible tactical discretion and, in all events, that petitioner had suffered no cognizable prejudice.

The post-conviction court ultimately rejected all of petitioner's claims. In so holding, the court concluded that petitioner had failed to establish that counsels' performance breached the standard of constitutionally competent representation, much less that he had been prejudiced by any alleged inadequate representation. Specifically, with respect to the conditional plea-based claims, the court emphasized that petitioner "has not pointed to any specific valid issue that could have been raised on direct appeal."

On appeal, petitioner challenges, *inter alia*, the post-conviction court's rejection of his claims that (1) Ludwig failed to properly reserve, for appeal, the pretrial ruling on petitioner's speedy trial motion; (2) appellate counsel failed to request that the trial court enter a corrected judgment of conviction, ORS 138.083, "that conformed to the requirements of ORS 135.335(3)"; and (3) Hart and Kohlmetz

improperly waived petitioner's speedy trial rights and delayed his trial without his consent.[14]

To prevail on a claim of inadequate assistance of counsel under Article I, section 11, the petitioner must prove, by a preponderance of the evidence, that legal counsel "failed to exercise reasonable professional skill and judgment based on the law at the time * * * counsel acted" and that that deficient performance "had a tendency to affect" the outcome of the prosecution. *Real v. Nooth*, 268 Or App 747, 752, 344 P3d 33 (2015). To prevail under the Sixth Amendment, petitioner must show that counsel's performance "fell below an objective standard of reasonableness" and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 US 668, 688, 694, 104 S Ct 2052, 80 L Ed 2d 674 (1984).

We first consider petitioner's contention on appeal that trial counsel's failure to reserve, in writing, the right to appeal from the pretrial ruling on petitioner's speedy trial motion constituted inadequate assistance of counsel. Petitioner argues—for the first time on appeal—that, "if he had been allowed to raise his speedy trial claim on direct appeal[,] he would have prevailed as he did in [petitioner's Clackamas County case, *Johnson*, 339 Or at 95]."

That argument was not raised in the post-conviction court. As noted, 269 Or App at 695-96, petitioner's claim, and argument, before the post-conviction court was global, generic, and amorphous. The amended petition alleges generally that trial counsel "failed to ensure that [the conditional pleas] conformed to the requirements of ORS 135.335(3)[.]" At no time before the post-conviction court did petitioner ever specify which of the over 140 pretrial rulings should have been reserved for appellate review, much less identify for the post-conviction court's cogent consideration the particular pretrial ruling—the denial of his speedy trial motion—that is the object of his argument on

---

[14] Petitioner also filed a *pro se* brief, assigning error to the post-conviction court's denial of his *pro se* post-conviction motions. Petitioner's *pro se* brief contains no argument explaining why he believes the court erred in its rulings, and we decline to consider the *pro se* arguments further.

this appeal. Nor, concomitantly, did petitioner ever argue to the post-conviction court that he had been prejudiced because, but for counsel's failure to reserve in writing the denial of the statutory speedy trial motion to dismiss, we or the Supreme Court would have reversed that ruling, permitting petitioner to withdraw his conditional guilty plea, with a dismissal of the charges. *See generally State v. Reeves,* 250 Or App 294, 301, 280 P3d 994, *rev den,* 352 Or 565 (2012) ("To preserve the argument for appeal, * * * [t]he appellant must have made the argument with sufficient particularity to allow the trial court to rule on the argument and correct any error."). Accordingly, because it was not preserved, we decline to address petitioner's original contention on appeal. *See Hale v. Belleque,* 255 Or App 653, 660, 298 P3d 596, *adh'd to on recons,* 258 Or App 587, 312 P3d 533, *rev den,* 354 Or 597 (2013) ("Preservation principles apply in the context of post-conviction relief and, as a general rule, arguments not made to the post-conviction court in support of a claim will not be considered on appeal.").

We turn to petitioner's contention that the post-conviction court erred in rejecting his claim of inadequacy of appellate counsel. The amended petition alleged that

> "[a]ppellate counsel * * * failed to file or otherwise take reasonable steps to ensure filing of a motion requesting that the trial court issue amended judgments of conviction which conformed to the requirements of ORS 135.335(3). At the time of petitioner's appeal, attorneys employed by the Office of Public Defense Services Appellate Division, routinely filed motions under ORS 138.083 to correct deficiencies in trial court judgments such as that upon which [the state] relied in challenging petitioner's right to appeal."

As with his claim relating to trial counsel's alleged default with respect to the conditional guilty plea, petitioner did not focus or refine the contention before the post-conviction court with respect to any particular ruling that would have been the object of such a putative correction. Nor did petitioner adduce any proof of the standard of adequacy alleged in the amended petition, much less present for the post-conviction court's consideration any reasoned argument that any such "correction" could have revived appellate review of matters not preserved in the original judgment.

Now, on appeal, petitioner contends:

"If appellate counsel had requested a corrected judgment, the trial court likely would have entered a corrected judgment that, in writing, reflected the parties' and the court's understanding that defendant entered a conditional plea so he could appeal the denial of the motion to dismiss. Then this court could have reviewed the error on direct appeal, and the result in the present case would have been a dismissal for lack of speedy trial under [the holding in petitioner's Clackamas County case, *Johnson*, 339 Or at 95]."

We decline to review that contention, as unpreserved, for essentially the same reasons as the preceding claim. Again, petitioner's position before the post-conviction court was that appellate counsel was inadequate for failing to seek a corrected judgment reserving review of an undifferentiated tangle of over 140 pretrial rulings; at no time did petitioner focus, as he does now on appeal, on the speedy trial ruling. Regardless of how we might otherwise have assessed the latter, we cannot, and will not, hold that the trial court erred in rejecting the former.

Finally, petitioner challenges the rejection of his claim that trial counsel provided inadequate assistance of counsel when they waived his 60-day and 90-day statutory speedy trial rights, ORS 136.290 and ORS 135.763, and otherwise delayed his trial in Multnomah County without his consent. We reject petitioner's contentions as to both the 60- and 90-day waivers because, for the reasons that follow, even assuming, without deciding, that counsel somehow breached the standard of constitutionally competent representation by not seeking to rescind those waivers, the trial court correctly concluded that petitioner failed to establish constitutionally cognizable prejudice from that conduct. We reject petitioner's remaining speedy trial-based contentions without discussion.

For purposes of post-conviction relief, "[p]rejudice of state constitutional magnitude is established by showing that counsel's advice, acts, or omissions had a tendency to affect the result of the prosecution. Under the United States Constitution, prejudice is established by showing that there is reasonable probability that but for counsel's deficient performance the result would have been different." *Hale*, 255

Or App at 660 (internal quotation marks and citations omitted); *see also State v. Russum*, 265 Or App 103, 113, 333 P3d 1191, *rev den*, 356 Or 575 (2014) ("Typically, in order to require a remedy, a defendant must offer some evidence that the violation of a constitutional right has resulted in some harm or prejudice.").

Here, petitioner failed to establish that, but for counsels' purported defaults with respect to the 60- and 90-day speedy trial requirements, the outcome of the predicate criminal case likely would have been different. The 60-day provision generally provides that, if the state does not bring a defendant who is in custody to trial within 60 days of the arrest, then, unless the defendant consents to not being tried within 60 days, the defendant must be *released from custody*. ORS 136.290(2).[15] Nothing in that statute provides for *dismissal* of the charges against the defendant. Accordingly, even assuming the factual premises of petitioner's "improper waiver" contention, the charges against him would not have been dismissed—and the outcome of the prosecution would not have been affected.[16]

Unlike the 60-day provision, the 90-day statutory speedy trial provision *does* provide generally, albeit subject to myriad qualifications, for dismissal of charges if the defendant is not brought to trial within 90 days of a request for trial. ORS 135.763; ORS 135.765.[17] However, petitioner presented no evidence that, if his counsel had made a "90-day" demand for trial pursuant to ORS 135.760, the state would have failed to bring the Multnomah County case to trial within that period. Thus, again, the trial court did not err in concluding that petitioner failed to prove that counsel's purported default caused constitutionally cognizable prejudice.

Affirmed.

---

[15] *See* 269 Or App at 689 n 2.

[16] We note, parenthetically, that the uncontroverted evidence before the post-conviction court was that petitioner would have continued to have been incarcerated in Washington County pending the resolution of the Washington County aggravated murder charges, regardless of any purported violation of ORS 136.290 with respect to the Multnomah County charges.

[17] ORS 135.765(1) provides, in pertinent part, that "the court shall dismiss any criminal proceeding not brought to trial in accordance with ORS 135.763." *See* 269 Or App at 689 n 3 (setting out pertinent text of ORS 135.763).