Submitted May 25, 2011, affirmed August 29, 2012, petition for review denied March 28, 2013 (353 Or 428)

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**KIERIN DIANE NICHOLS,**
*Defendant-Appellant.*

Josephine County Circuit Court
08CR0002; A141527

284 P3d 1246

Peter Gartlan, Chief Defender, and Laura A. Frikert, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Jeremy C. Rice, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Brewer, Judge, and Sercombe, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Defendant appeals from a judgment convicting her of murder, ORS 163.115; first-degree theft, ORS 164.055; and unlawful possession of a controlled substance, *former* ORS 475.840(3) (2009), *renumbered as* ORS 475.752 (2011). We reject three of her four assignments of error without further discussion and write only to address her third assignment of error, which challenges the exclusion of testimony from her expert witness. Because the proposed testimony would not have been helpful to the jury, the trial court's decision to exclude it was not error. Accordingly, we affirm.

We begin with a brief overview of the case background and the evidence presented by the state at trial. We then discuss in more detail the testimony about defendant's behavior in the beginning stages of the police investigation of the murder at issue because that testimony is central to our discussion of whether the proffered expert testimony would have been helpful to the jury.

Defendant was convicted of murdering her elderly neighbor, Lola Pierce, in Pierce's home.[1] Pierce was last seen alive at a local Safeway store on November 15, 2007. She missed a doctor's appointment the following morning and her friend, Westerman, noticed that Pierce's front door was locked and had a "do not disturb" sign hanging from the doorknob. Westerman became concerned about Pierce's well-being and investigated. She called the police after she discovered that the back sliding glass door at Pierce's home was partially open. The responding officers discovered Pierce's body on the kitchen floor. Initially they believed that she had died of natural causes, but her death was later ruled a homicide caused by asphyxiation due to strangulation with multiple blunt head and facial injuries.

The ensuing police investigation revealed that the relationship between Pierce and defendant had recently been strained. Pierce had accused defendant of entering her home uninvited and stealing her Oxycodone medication the month before her murder. The police investigation of that

---

[1] Defendant was also convicted of theft and possession of a controlled substance, but her appeal is focused solely on rulings related to her murder conviction.

theft did not result in charges against defendant, though defendant was taken into custody for a parole violation. Nevertheless, when police discovered Pierce's body, they investigated defendant.

That investigation ultimately resulted in defendant's arrest for Pierce's murder and the theft of Pierce's Oxycodone and other property. At trial, the state's theory was that defendant killed Pierce while attempting to steal from her. The state introduced evidence of a recorded conversation between defendant and her husband that included potentially incriminating statements, as well as evidence of incriminating statements by defendant from four inmates incarcerated with her. The investigating detectives testified as to her strange behavior during some early interviews, and the state presented evidence that defendant possessed and had hidden Pierce's property immediately after her death. Defendant gave inconsistent statements to police about the stolen items as well as statements that were inconsistent with other known historical facts. At the close of the trial, the jury returned a guilty verdict on all counts. Defendant appeals from the resulting judgment.

Defendant contends that the trial court erred when it excluded expert testimony about defendant's addiction and mental health issues. She asserts that her expert's testimony would have provided an alternative explanation for defendant's strange behavior during the early stages of the investigation. To frame our discussion of that assignment of error, we recount the relevant testimony and facts.

Detective Brissett informed defendant of Pierce's death on November 20, 2007, four days after police discovered her body. Although defendant and Pierce shared a driveway and defendant had been home most of the intervening four days, she expressed surprise at the news. On November 23, detectives Lidey and Vorberg interviewed defendant in her home, and they testified at trial about her behavior during that interview. They recounted an incident at the end of the interview, in which defendant asked if she could go to the store to get some pain medication. The detectives informed her that they would first like to complete their search of her home. Defendant agreed but then "sprung up from

the couch" and "bee-line[d] down the hall." The detectives followed her and watched her remove a videotape from her closet and a small plastic bag apparently concealed in the videotape cover. Then, in plain view of the detectives, she moved in a way that indicated that she was removing a ring from her finger, and then quickly placed her hand in her front pants pocket. When the detectives asked her what she was doing, she responded "Nothing." Lidey, with defendant's consent, searched her and discovered a large gold and diamond ring and a plastic bag containing Oxycodone. In response to further questions, defendant indicated to Lidey that she had stolen the pills from Pierce in October. At first, defendant claimed that she owned the ring, but when pressed by Brissette later that day, she admitted that she had also stolen the ring from Pierce, again claiming that she did so in October. Defendant also made inconsistent statements to Brissette about her theft of the Oxycodone.

To counter the testimony of Lidey, Vorberg, and Brissett, defendant sought to have her counselor testify about her mental health issues. In particular, defendant contended that, because the state was using her inappropriate responses and behavior during the investigation to imply that she was guilty, she should be allowed to introduce evidence, in the form of expert testimony, of possible other explanations for her conduct. Defendant contended that the proposed expert testimony was relevant to show that her behavior was not an indication of guilt but, rather, was a result of her mental illness. The state objected to the proposed testimony on grounds of relevance, OEC 401, and that it would not assist the trier of fact, OEC 702.

To address the state's objections, the trial court allowed defendant to present the counselor's testimony in an offer of proof outside the presence of the jury before ruling on its admissibility. The counselor testified that he began working with defendant before her incarceration and that he had performed a mental health assessment that revealed that she suffered from bipolar disorder and borderline personality disorder, and that she had a long history of substance abuse dependency for a variety of substances and a history of kleptomania. He also mentioned that he observed manifestations of defendant's self-destructive

behavior in the form of "picking on herself and scars * * * from the scabs healing over and then * * * she would pick on those scabs and, and re-injure herself in that fashion." At the conclusion of the offer of proof the state renewed its objections on the basis of relevancy and that the proposed testimony would not be helpful to the trier of fact.

The trial court excluded the proposed testimony because it did not establish a specific link between the disorders the counselor identified and defendant's behavior during the investigation. That is, although the counselor testified generally that defendant suffered from the identified mental illnesses, he did not explain how people with those illnesses behave or how he might have expected them to behave—he simply listed the diagnoses and left it at that, offering no link between the diagnoses and the behavior that defendant sought to explain through the counselor's testimony. The trial court explained:

> "* * * I haven't heard any testimony that relates how these things that he's talking about would explain why she might answer too quickly * * * or what I anticipate's going to be coming in * * * from the two officers who were * * * interviewing her, at least Detective Lidey as to the bizarre behavior that Detective Brissette was talking about."

Accordingly, the trial court concluded that the testimony would not be helpful to the jury and excluded it.[2]

To be admissible, expert testimony must be relevant under OEC 401[3] and it must provide some assistance to the trier of fact under OEC 702. If those conditions are satisfied, "the testimony will be excluded only if it is unduly prejudicial, repetitive, or falls under some other exclusionary provision as provided in OEC 403 * * *." *State v. Brown*, 297 Or 404, 409, 687 P2d 751 (1984). Because the trial court excluded defendant's counselor's testimony only on the basis that it would not assist the jury, we limit our review to that issue.

---

[2] Evidence of defendant's substance abuse and dependency was introduced in other forms during the trial.

[3] OEC 401 explains:

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

We review the exclusion of expert testimony under OEC 702 for errors of law and, if a correct application of law allows for more than one option, for abuse of discretion. *See State v. Rogers*, 330 Or 282, 312-15, 4 P3d 1261 (2000) (clarifying that appellate courts review for errors of law "whether a trial court properly applied OEC 702 to decide whether an expert is qualified to give testimony *relative to a particular topic*, because that determination is a question of the application of law") (emphasis in original); *Madrid v. Robinson*, 324 Or 561, 563, 931 P2d 791 (1997) (reviewing the exclusion of expert testimony to determine whether the trial court applied the correct principle of law); *State v. Gherasim*, 329 Or 188, 198, 985 P2d 1267 (1999) ("We review the trial court's order to exclude expert testimony to determine whether the court applied the correct principles of law and did not abuse its discretion."). The test under OEC 702 has been stated rather simply as "whether the expert's testimony, if believed, will be of help or assistance to the jury." *State v. Stringer*, 292 Or 388, 391, 639 P2d 1264 (1982). To assist the trier of fact, "the subject of the testimony must be within the expert's field, the witness must be qualified, and the foundation for the opinion must intelligibly relate the testimony to the facts." *Brown*, 297 Or at 409.

On appeal, the parties generally reprise their arguments before the trial court. Accordingly, this case turns on whether the trial court correctly concluded that the counselor's testimony would not assist the jury because he simply listed defendant's mental health issues without explaining how those issues might be manifested in defendant's behavior, particularly the behavior that defendant hoped to explain away at trial. To answer that question, we look to prior case law applying the OEC 702 requirement that the testimony "assist the trier of fact."

Two cases in particular are instructive. In *Gherasim*, the Supreme Court reviewed a trial court's order that excluded expert testimony concerning the expert's diagnosis of a rape victim with dissociative amnesia. 329 Or at 192. In that case, the victim had identified the defendant as her assailant, but the defendant asserted that someone else had assaulted the victim and he merely arrived at the

scene and attempted to help her. There was no eyewitness or forensic evidence introduced, so the jury's choice of whose account to believe was critical to its determination of guilt. At trial, the defendant sought to introduce the testimony of a psychiatrist, who would have testified that the victim experienced dissociative amnesia, which had affected her ability to recall the events of the assault accurately at trial. After the state objected, the trial court allowed an offer of proof, which went into the specifics of what aspects of the victim's behavior suggested the presence of dissociative amnesia. However, the trial court ultimately excluded the testimony.

The Supreme Court concluded that the expert's testimony would have been helpful and that its exclusion was not harmless because

> "[t]he determination of defendant's guilt primarily depended on whether the jury believed the victim's or defendant's version of what had occurred. Defendant's expert would have testified that, in his opinion, the victim suffered from dissociative amnesia and that that condition affected her capacity to remember what had occurred on the night that she was assaulted. The testimony was evidence that defendant was entitled to present to the jury. The state argues that the expert's testimony would not have been helpful, because the expert 'offered his diagnosis without telling the court what the diagnosis meant.' Although the expert did not explain his diagnosis in detail, that lack of detail did not render his testimony 'unhelpful' to the jury."

*Id.* at 198 (citation omitted).

*State v. Middleton*, 294 Or 427, 429-30, 657 P2d 1215 (1983), involved a social worker's expert testimony that the victim's reaction to rape was typical of most victims of family sexual abuse. The victim testified at trial that her father had raped her. Her father, who denied that the rape occurred, introduced statements by the victim that were inconsistent with her claim of rape. Two social workers testified for the state regarding the reactions of young victims of family sexual abuse. One of the social workers testified that the victim's behavior was typical of most victims. The victim's father challenged the admission of

that testimony at trial, in part, on the basis that it was not helpful to the jury. *Id.* at 434. The Supreme Court concluded that the testimony was admissible because it could help the jury better assess the witness's credibility by explaining her "superficially bizarre behavior" (*i.e.* making inconsistent statements about whether the rape occurred) by identifying "its emotional antecedents[.]" *Id.* at 436.

This case lacks the kind of evidence that, in *Gherasim* and *Middleton*, established the connection between the proffered diagnoses and the behavior the expert sought to explain. In *Gherasim*, the expert addressed the signs that the victim likely suffered from dissociative amnesia and explained that, as a result, her capacity to remember what had occurred on the night she was assaulted was impaired. In *Middleton*, the expert identified the aspects of the victim's behavior that were characteristic of most victims of family sexual abuse. In this case, however, defendant's counselor simply testified that he had diagnosed defendant with bipolar disorder, borderline personality disorder, and a history of substance abuse dependency and kleptomania, without offering any explanation as to how those diagnoses might generally affect someone's behavior, let alone how they might have affected defendant's behavior. As a result, the jury would have been left with diagnoses but no further explanation as to how those diagnoses might affect defendant's behavior. Such testimony would not have assisted the jury in assessing defendant's behavior.

In *Gherasim*, the expert's failure to explain his diagnosis in detail was not fatal to the admissibility of his testimony, but here defendant failed even to offer the level of explanation offered in *Gherasim*. That is, in *Gherasim* the expert explained that the victim's condition affected her capacity to remember and to accurately recount what occurred on the night that she was assaulted. In this case, defendant's counselor failed to offer even a rudimentary explanation that would link defendant's behavior to her mental health issues. Accordingly, the trial court did not err in excluding the testimony of defendant's mental health counselor.

Affirmed.