JAMES, J.
*435 In this case we are asked to determine whether criminal defense counsel renders constitutionally ineffective assistance under the Sixth Amendment to the United States Constitution when counsel decides to concede a defendant's guilt as to some charges in closing argument after discussing that strategy with the defendant-but in that discussion defendant neither affirmatively acquiesces nor rejects the proposed strategy, but, rather, simply maintains his innocence. We conclude that resolution of that question requires a factual inquiry into what was the defendant's fundamental objective for the *774 representation, as expressed to defense counsel. When the defendant's fundamental objective is to maintain innocence regardless of the potential outcome, counsel may not concede guilt without the affirmative consent of the defendant. However, where the defendant is guided by a different fundamental objective, for example minimizing sentence exposure, an attorney's decision to concede guilt without express consent may not be constitutionally ineffective assistance of counsel. Because that necessary factual inquiry is missing from this case, we reverse and remand to the post-conviction court for fact-finding in accordance with this opinion.
"We are bound by a post-conviction court's findings of fact if they are supported by evidence in the record, and we review its legal conclusions for errors of law." Ayer v. Coursey , 253 Or. App. 726, 728, 292 P.3d 595 (2012). "If the post-conviction court did not expressly make factual findings, and 'there is evidence from which the facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with' the court's ultimate conclusion." Id. at 728, 292 P.3d 595 (quoting Ball v. Gladden , 250 Or. 485, 487, 443 P.2d 621 (1968) ). We state the facts in accord with these standards.
In 2011, petitioner was charged with 28 criminal counts that spanned a variety of sexual crimes committed against his daughter and her friend when they were minors. The state's theory was that petitioner sexually abused his daughter from the time she was 12 until she was 21, and that petitioner sexually abused his daughter's friend over a *436 period of about one year. Eleven of the counts alleged the use of forcible compulsion. One count alleged that the victim was physically helpless.
Petitioner entered not guilty pleas for all counts and proceeded to trial. Based on the evidence as it developed, petitioner's counsel did not believe there was any chance that the jury would find the sexual encounters did not happen. She did believe, however, that there were plausible arguments that could be made that the sexual encounters did not include forcible compulsion and that the daughter's friend was not physically helpless in respect to one of the counts. Prior to closing arguments, counsel discussed her strategy of acknowledging guilt as to some counts with petitioner. As counsel testified in the post-conviction proceeding:
"Before closing argument, I discussed the chosen strategy with petitioner along with the reasons I believed it was the best option available. Petitioner did not object to me pursuing that strategy, although he did maintain his complete innocence."
Following that discussion with petitioner, trial counsel did not argue for acquittal in her closing arguments, but rather argued that the sexual encounters were consensual and that the daughter's friend was not physically helpless with respect to Count 3. Counsel also requested and received jury instructions on lesser included offenses for more than one-half of the charges.
In her closing argument, counsel stated:
"Yes, she's a minor, that's what the jury instruction covers. [Petitioner] is having sex with [victim 2] and she's a minor, she's agreeing to it. * * * * * "Yes it's against the law. And yes, there is a fair amount of guilt, that you can imagine, from her perspective.
"* * * * *
"As sick as it may seem, they were both willing participants in an ongoing sexual relationship * * *.
"* * * * *
"What makes sense is that [victim 1] participates in this relationship with [petitioner].
*437 "* * * * *
"This is when she's 14. Despite her age she agrees. That doesn't take it out of a crime, despite her age, but her consent has to be considered by you in some manner on whether or not that act was forcible compulsion."
Petitioner was convicted on six counts of rape in the first degree, ORS 163.375 ; two counts of sexual abuse in the first degree, ORS 163.427 ; four counts of rape in the third degree, ORS 163.355 ; four counts of sodomy in the third degree, ORS 163.385 ; nine counts of sodomy in the first degree, ORS 163.405 ;
*775 and one count of compelling prostitution, ORS 167.017.[1]
Following his conviction, petitioner pursued post-conviction relief on a single claim of ineffective assistance of counsel stemming from trial counsel's concession that consensual sexual acts occurred between petitioner and the two minor victims. The post-conviction court denied petitioner relief, explaining that "[t]he strategy [to concede that sexual contact between petitioner and victims did occur] did not amount to a guilty plea and did not require Petitioner's consent as long as he was informed of the strategy." In so holding, the post-conviction court relied on our decision in Pinnell v. Palmateer , 200 Or. App. 303, 326, 114 P.3d 515 (2005), rev. den. , 340 Or. 483, 135 P.3d 318 (2006). In Pinnell we relied on Florida v. Nixon , 543 U.S. 175, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004), for our holding that a concession of guilt "by counsel does not amount to a guilty plea and, thus, does not require petitioner's consent." Pinnell , 200 Or. App. at 306, 114 P.3d 515. This appeal followed.
On appeal, petitioner assigns error to the post-conviction court's denial of relief, arguing that, in selecting a trial strategy that conceded petitioner's guilt, trial counsel was obligated to obtain petitioner's affirmative consent because that trial strategy amounted to a de facto guilty plea. After the United States Supreme Court decision in McCoy v. Louisiana , --- U.S. ----, 138 S.Ct. 1500, 200 L.Ed.2d 821 (2018), petitioner submitted supplemental briefing *438 arguing that trial counsel's strategy was structural error under the Sixth Amendment because counsel conceded sexual contact despite petitioner's assertion of his innocence. The state argues that petitioner's affirmative consent was not necessary before trial counsel pursued the strategy at issue, because the concession of guilt was not the same as a guilty plea and, in any event, petitioner failed to prove he suffered prejudice as a result of counsel's chosen strategy.
"Post-conviction relief is warranted when there has been a substantial denial of a petitioner's rights under the United States Constitution, or under the Oregon Constitution, or both, and which denial rendered the conviction void." Green v. Franke , 357 Or. 301, 311, 350 P.3d 188 (2015) (internal quotation marks omitted). In order to demonstrate ineffective assistance of counsel, a petitioner must prove that: (1) counsel's performance was deficient because counsel failed to exercise reasonable professional skill and judgment; and (2) prejudice resulted. Johnson v. Premo , 361 Or. 688, 699, 399 P.3d 431 (2017). A petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington , 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We review the post-conviction court's denial of relief on a claim of ineffective assistance of counsel for errors of law. Green , 357 Or. at 312, 350 P.3d 188.
We begin with a discussion of relevant law and principles. Under the Sixth Amendment, "[t]he right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction." Faretta v. California , 422 U.S. 806, 834, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). "The accused during a criminal prosecution has at stake interest of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction." In re Winship , 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Because "certain decisions regarding the exercise or waiver of basic trial rights are of such moment that they cannot be made for the defendant by a *439 surrogate[,]" a defendant has the " 'ultimate authority' to determine 'whether to plead guilty, waive a jury, testify in her or her own behalf, or take an appeal.' " Nixon , 543 U.S. at 187, 125 S.Ct. 551 (quoting *776 Jones v. Barnes , 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) ).
In Nixon , the Court held that counsel's concession as to guilt, in the absence of explicit consent by the defendant, was not ineffective assistance of counsel. 543 U.S. at 189, 125 S.Ct. 551. However, Nixon conditions that holding on two essential facts. First, Nixon arose in the unique context of a capital murder trial. Because of that context, the Court noted that the concession strategy was reasonable because "aggressive evidence would thus be separated from the penalty phase, enabling the defense to concentrate that portion of the trial on mitigating factors." Id . at 188, 125 S.Ct. 551. The court noted, however, that "such a concession in a run-of-the-mine trial might present a closer question." Id . at 190, 125 S.Ct. 551.
Second, and equally essential to the Court's holding in Nixon was the behavior of the defendant. The Court noted that "[a]lthough [the attorney] had represented Nixon previously on unrelated charges and the two had a good relationship in [the attorney's] estimation, Nixon was generally unresponsive during their discussions." Id . at 181, 125 S.Ct. 551 (internal citation omitted). That behavior culminated in the defendant removing himself from the trial, as the Court summarized:
"When Nixon's trial began on July 15, 1985, his unresponsiveness deepened into disruptive and violent behavior. On the second day of jury selection, Nixon pulled off his clothing, demanded a black judge and lawyer, refused to be escorted into the courtroom, and threatened to force the guards to shoot him. An extended on-the-record colloquy followed Nixon's bizarre behavior, during which [the attorney] urged the trial judge to explain Nixon's rights to him and ascertain whether Nixon understood the significance of absenting himself from the trial. * * * When the judge examined Nixon on the record in a holding cell, Nixon stated he had no interest in the trial and threatened to misbehave if forced to attend. * * * The judge ruled that Nixon had intelligently and voluntarily waived his right to be present at trial."
Id . at 182, 125 S.Ct. 551 (internal citation omitted).
*440 The Florida Supreme Court had equated the concession of guilt without explicit authorization "to a guilty plea," and therefore "presumed deficient performance." Id . at 189, 125 S.Ct. 551. The Court rejected such a per se approach. Instead, in reaching its holding, the Court framed the attorney's choice to concede guilt absent explicit consent in light of the defendant's refusal to participate: "[the attorney] was obliged to, and in fact several times did, explain his proposed trial strategy to Nixon. Given Nixon's constant resistance to answering inquiries put to him by counsel and court, [the attorney] was not additionally required to gain express consent before conceding Nixon's guilt." Id . at 189, 125 S.Ct. 551 (internal citations omitted).
Following Nixon , we evaluated the question of client consent to a concession of guilt made during a trial in Pinnell . There, the petitioner's counsel made statements in opening argument that the petitioner argued had "for all practical purposes, * * * pled [petitioner] guilty to felony murder."[2] Pinnell , 200 Or. App. at 325, 114 P.3d 515 (brackets in original). The petitioner argued that his trial counsel had failed to obtain his consent to make such an argument, but did not argue that he was uninformed of that strategic decision. Relying upon language in Nixon , we held that "such a concession by counsel does not amount to a guilty plea, and thus, does not require petitioner's consent." Id.
Subsequent to Pinnell , and subsequent to litigation of this case before the post-conviction court, the United States Supreme Court decided McCoy . There, it revisited the issue of a trial counsel's concession of guilt, and clarified Nixon , holding that:
"[i]f a client declines to participate in his defense, then an attorney may permissibly guide the defense pursuant to the strategy *777 she believes to be in the defendant's best interest. Presented with express statements of the client's will to maintain innocence, however, counsel may not steer the ship the other way."
McCoy , --- U.S. ----, 138 S.Ct. at 1509.
*441 At issue in McCoy was whether defense counsel's concession-that the defendant had in fact committed the murders he had been charged with, a concession that counsel made over the defendant's adamant protests-violated the Sixth Amendment. The Court characterized the issue as one of client objective, saying: "These were not strategic disputes about whether to concede an element of a charged offense; they were intractable disagreements about the fundamental objective of the defendant's representation. For [defendant], that objective was to maintain 'I did not kill the members of my family.' " Id. at 1510 (internal citation omitted).
"Some decisions, however, are reserved for the client-notably, whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal.
"Autonomy to decide that the objective of the defense is to assert innocence belongs in this latter category . Just as a defendant may steadfastly refuse to plead guilty in the face of overwhelming evidence against her, or reject the assistance of legal counsel despite the defendant's own inexperience and lack of professional qualifications, so may she insist on maintaining her innocence * * *."
Id . at 1508 (emphasis added; internal citation omitted).
The Court explained that, because it was client autonomy, not counsel's incompetence, that was disputed, the ineffective assistance of counsel test in Strickland did not apply. Id. at 1510-11. Instead, when the defendant's attorney was allowed to "usurp control of an issue within [the defendant's] sole prerogative," the error was "structural." Id. at 1511. "Structural error 'affect[s] the framework within which the trial proceeds,' as distinguished from a lapse or flaw that is 'simply an error in the trial process itself.' " Id. (quoting Arizona v. Fulminante , 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (brackets in McCoy ) ).
As we read McCoy , when approaching the issue of counsel's concession of guilt, the proper inquiry is on the fundamental objective of the defendant, as expressed to defense counsel. When a defendant's expressed fundamental objective is to maintain innocence, that defendant's *442 Sixth Amendment guarantees are violated when counsel nevertheless concedes guilt in light of that objective. In light of McCoy , our holding in Pinnell , while accurate, is incomplete. Pinnell stated that the concession in that case did not amount to a guilty plea for purposes of requiring consent. 200 Or. App. at 326, 114 P.3d 515 ("[S]uch a concession by counsel does not amount to a guilty plea and, thus, does not require petitioner's consent."); see Nixon , 543 U.S. at 189, 125 S.Ct. 551. However, after McCoy , even if a concession is not tantamount to a plea for purposes of requiring counsel to obtain a petitioner's express consent, a petitioner's fundamental objective to assert innocence is reserved to the client in the same way as the right to plead guilty, and that autonomy to direct the defense cannot be usurped by defense counsel. Thus, under McCoy , Nixon , and Pinnell , the defendant must be informed of counsel's proposed strategy that requires the concession of guilt, but when such a strategy conflicts with defendant's fundamental expressed objective to maintain innocence, trial counsel "may not steer the ship the other way." McCoy , --- U.S. ----, 138 S.Ct. at 1509.
We now turn to petitioner's post-conviction claim in this case. Trial counsel stated that petitioner did not object to her proposed strategy, but that petitioner maintained his complete innocence at all times. Petitioner agreed with trial counsel that he maintained his innocence at all times, and the post-conviction court found that petitioner "maintained his complete innocence." The post-conviction court analyzed petitioner's claim under Pinnell , concluding that the concession did not amount to a guilty plea and did not require petitioner's consent as long as he was informed of the strategy. That analysis took place before McCoy clarified counsel's obligations with regard to a concession of guilt. However, the proper inquiry for the post-conviction court was whether counsel's concession *778 was directly contrary to the client's expressed fundamental objective of the representation-a structural error under the Sixth Amendment-and, if it was not, did that strategic decision on the attorney's part fall below the minimum standard for counsel's performance. Specifically, when petitioner "maintained his complete innocence," was that an expression of his fundamental objective for the trial? *443 In sum, in light of McCoy , our decision in Pinnell did not completely inform the post-conviction court of the factual inquiry. Therefore, "it is inappropriate to affirm the post-conviction court's judgment * * * on the record before us." Green , 357 Or. at 323, 350 P.3d 188. We, accordingly, vacate the judgment and remand to the post-conviction court for that court to evaluate whether trial counsel's strategy to concede sexual contact between defendant and victim during closing met constitutional standards, as clarified by McCoy and this opinion.[3]
Vacated and remanded.

Petitioner was acquitted of one count of rape in the first degree; and one count of sodomy in the first degree.

We did not determine whether, in fact, the petitioner's counsel had conceded guilt to felony murder, a crime with which defendant had been charged, in addition to aggravated murder. However, we assumed arguendo that it was a concession and discussed it as if it were a concession throughout the opinion.

Our opinion should not be read to foreclose the possibility that the factual record will need to be reopened on remand to address the issue as clarified by McCoy .