Argued and submitted August 14, 2018, affirmed June 10, 2020

KIERIN NICHOLS,
*Petitioner-Appellant,*

*v.*

Rob PERSSON,
Superintendent,
Coffee Creek Correctional Facility,
*Defendant-Respondent.*

Washington County Circuit Court
C150810CV; A163249

468 P3d 952

Petitioner appeals from a judgment denying her petition for post-conviction relief. In the underlying criminal case, petitioner was convicted of intentional murder, first-degree theft, and unlawful possession of a controlled substance. Petitioner denied killing the victim and opposed any defense strategy that implicated her in that crime. In accordance with her wishes, her trial counsel pursued a defense theory that the victim either died of natural causes or was killed by someone else. Petitioner asserts that counsel's selection of defense theories was not based on a constitutionally adequate investigation of her mental illness, intellectual capacity, or drug dependence and the effect of those conditions on her ability to form the requisite intent for intentional murder. Without that investigation, she argues that trial counsel could not adequately advise her or rely on her refusal to pursue a particular defense. *Held*: Because petitioner presented no evidence that she would have cooperated with a defense based on her diminished capacity had she been presented with adequate information and advice and because she did not show that there was more than a "mere possibility" that competent counsel could have presented such a defense without her consent, petitioner failed to demonstrate that she was prejudiced by the alleged deficiencies in the representation afforded to her.

Affirmed.

Linda Louise Bergman, Senior Judge.

Lindsey Burrows argued the cause for appellant. Also on the briefs was O'Connor Weber LLC.

Adam Holbrook, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Egan, Chief Judge, and Powers, Judge.*

_____
  * Egan, C. J., *vice* Garrett, J. pro tempore.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

Petitioner appeals from a judgment denying her petition for post-conviction relief. In the underlying criminal case, petitioner was convicted of intentional murder, ORS 163.115(1)(a) (2017), *amended by* Or Laws 2019, ch 635, § 4,[1] first-degree theft, ORS 164.055, and unlawful possession of a controlled substance, *former* ORS 475.840(3)(b) (2009), *renumbered as* ORS 475.752(3)(b). Petitioner denied killing the victim and opposed any defense strategy that implicated her in that crime. In accordance with her wishes, her trial counsel pursued a defense theory that, based on the evidence, the victim either died of natural causes or was killed by someone else. Petitioner asserts in her post-conviction case that counsel's selection of defense theories was not based on a constitutionally adequate investigation of her mental illness, intellectual capacity, or drug dependence and the effect of those conditions on her ability to form the requisite intent for intentional murder. Without that investigation, she argues that trial counsel could not adequately advise her or rely on her refusal to pursue a particular defense.

We conclude that, because petitioner presented no evidence that she would have cooperated with a defense based on her diminished capacity had she been presented with adequate information and advice and because she did not show that there was more than a "mere possibility" that competent counsel could have presented such a defense without her consent, petitioner failed to demonstrate that she was prejudiced by the alleged deficiencies in the representation afforded to her. Accordingly, we do not address whether trial counsel was constitutionally inadequate for failing to investigate, and we affirm.

We take the following facts about the underlying criminal trial from our opinion in the direct appeal, *State v. Nichols*, 252 Or App 114, 284 P3d 1246 (2012), *rev den*, 353 Or 428 (2013), as supplemented by undisputed evidence in the post-conviction record. Petitioner was convicted of

---

[1] In 2019, ORS 163.115 was amended to rename the crime of murder defined therein as "murder in the second degree." *See* Or Laws 2019, ch 635, § 4.

intentional murder, first-degree theft, and unlawful possession of a controlled substance based on killing her elderly neighbor while stealing her neighbor's prescription medication and other items. *Id*. at 116. Petitioner had admitted to stealing prescription medication and a ring from her neighbor when those items were found on her during the police investigation, but she argued at trial, based on the evidence and the incomplete and compromised investigation by the police, that the victim had died of natural causes or was killed by someone else.

At trial, defense counsel did not attempt to present either a complete or a partial defense to murder based on petitioner's mental illness, intellectual disability, or drug dependence. Trial counsel did argue, however, that petitioner's "bizarre" behaviors during police interviews and statements made while incarcerated were due to her mental illness or intellectual disability and were not an indication of her guilt. To support that argument, trial counsel had sought to introduce testimony from Dr. James Harper, who evaluated petitioner shortly before trial, and Gary Eby, who was petitioner's mental-health counselor before her incarceration. The trial court did not allow Dr. Harper's testimony when it was offered, because it was offered before the state admitted statements made by petitioner that trial counsel sought to explain through Dr. Harper's testimony and, thus, the court concluded that the testimony would be confusing to the jury. Petitioner's trial counsel did not make any further attempts to offer Dr. Harper's testimony at trial. The trial court also excluded Eby's testimony as not relevant to the issues for which trial counsel sought to use it, because counsel did not connect Eby's diagnoses of petitioner to her behaviors. *Nichols*, 252 Or App at 118. On appeal, we affirmed petitioner's convictions. We concluded that Eby's testimony was inadmissible under OEC 702, because it did not include an explanation that linked petitioner's behavior during the investigation and her mental health conditions. *Id*. at 121.

Petitioner then petitioned for post-conviction relief, alleging that her trial counsel was constitutionally inadequate under Article I, section 11, of the Oregon Constitution and the Sixth and Fourteenth Amendments to the United

States Constitution. As relevant on appeal, she alleged that trial counsel was inadequate in the following ways:

"G.   Trial counsel did not provide a foundation for the testimony of Dr. James Harper. Trial counsel did not provide a rudimentary explanation that linked the Petitioner's behavior to Dr. Harper's testimony. One example of Petitioner's behavior that Dr. Harper could explain was how Petitioner behaved when talking about her dogs when she was anxious. This is an alternative explanation of her mental faculties that is inconsistent with the state's theory and proof of the case. Without this explanation of her psychological state, the jury relied on this diversion technique or her behavior to convict her of the offense. Counsel failed to demonstrate professional skill and judgment commensurate with the seriousness of the case in failing to help the jury better assess Petitioner's statements in recorded telephone calls from the jail by explaining her bizarre behavior by identifying its emotional antecedents. If the jury had received this information, the jury would have acquitted petitioner or found her guilty of a lesser included offense. * * *

"H.   Dr. James Harper evaluated Petitioner and had diagnosed her with bipolar disorder, borderline personality disorder, a history of substance abuse dependency and kleptomania. Trial counsel did not offer any explanation how those diagnoses might generally affect someone's behavior, or in the alternative, how the diagnoses affect Petitioner's behavior. There is no proffered explanation how the diagnoses affect Petitioner's behavior. Dr. Harper's explanations would assist the jury in assessing petitioner's behavior, but trial counsel did not elicit explanations from the witness. If the jury had this information, the jury would have acquitted Petitioner or found her guilty of a lesser included offense.

"I.   Trial counsel did not ask Dr. James Harper to explain Petitioner's opiate addiction and mental status, which provide a defense or negate an element of the charged crime. This would have resulted in an acquittal or conviction of a lesser included offense.

"J.   Trial counsel did not investigate and obtain documentation of Petitioner's mental health and medical treatment. Trial counsel did not present mental health information or testimony to the jury. This evidence provides a complete defense or can negative the intent element of the crime of murder. When intent is uncertain the jury verdict

must result in an acquittal or conviction of a lesser offense. Most if not all mental health documentation has been destroyed by the service provider. Petitioner was unable to present this evidence during her trial and was prejudiced by trial counsel's failure to obtain the records and information while the case was pending in 2008 and 2009.

"K.   Trial counsel did not consult or call an expert witness on the effects of painkiller addiction. Trial counsel did not present an explanation about the behavior of addicted or habitual users. Trial counsel did not investigate and present information to the jury explaining the contraindications of the medications Petitioner was taking at the time of the incident. This would have explained the prior theft of [the victim's] belongings and medications and presented a defense based on Petitioner's mental health at the time of the event, resulting in an acquittal.

"L.   Trial counsel did not investigate Petitioner's evaluations and treatment at 'Options for Southern Oregon' from 2003 until the date when Petitioner was arrested for this charge. All of the records prior to Petitioner's arrest have been destroyed due to age, pursuant to agency policy. Petitioner was unable to present any defense because trial counsel did not obtain this information while the case was pending in 2008-2009. If the jury had been provided with information about Petitioner's mental health and how her mental health affected her actions at the time of this offense, the jury would have acquitted her or found her guilty of a lesser included offense.

"* * * * *

"N.   Trial counsel failed to investigate petitioner's treatment at the 'Pain Specialists of Southern Oregon.' Dr. Joseph Savino was the Petitioner's care provider and trial counsel did not investigate or consult with the doctor about Petitioner's health, examination results of imaging performed on her, and no injury is in the record regarding investigation of the prescriptions that Dr. Savino wrote for Petitioner. Petitioner was prescribed the same medication that was in her possession after the death in this case. This contradicts any inference Petitioner was desperate to steal medication from the victim or had a motive to steal because Petitioner had prescribed access to medication. If the jury had this information, the jury would have acquitted Petitioner or found her guilty of a lesser included offense."

In support of those allegations, petitioner presented two declarations from Dr. Harper, a psychological examination of petitioner performed by Dr. Alexander Duncan, and declarations from two criminal defense attorneys.

Dr. Harper attested that, when he was asked by petitioner's trial counsel to evaluate her, he was not given a specific referral question but was to evaluate her mental state "in general." He diagnosed petitioner with "opioid dependence, anxiety disorder, and depressive disorder not otherwise specified." He also attested that she exhibited unusual "idiosyncratic behavior" and that her actions were "affected by her circumstances and diagnosis." With regard to documentation, he attested that petitioner's trial counsel did not give him a list of petitioner's medications or medical records for when she was hospitalized and in a coma. Dr. Harper stated that, had he been given that information, it would have affected his diagnoses of petitioner and he would have changed his advice to petitioner's trial counsel. He further stated that, based on that information, additional investigation was required to "fully and meaningfully understand [petitioner's] mental functioning."

Dr. Duncan prepared a report in which he opined that, at the time of the alleged crimes, petitioner "was experiencing co-occurring substance abuse problems, psychiatric symptoms, and potential cognitive impairment" and that, "[i]f these issues had been fully explored, assessed, and were indeed present to the extent she exhibited during this exam, it would have raised strong questions about [petitioner's] mental state and capacities to form intent." However, he acknowledged that it was difficult to determine the degree to which her cognitive deficits were present at the time of the crimes and that "[i]t's possible that her cognitive limitations have developed over this detention period," particularly considering the medical problems she developed while in detention and her family history of dementia. Dr. Duncan opined that, at the time of the alleged crimes, petitioner met the criteria for "Opioid Use Disorder, Severe; Sedatives, Hypnotics, or Anxiolytics Use Disorder, Severe; Unspecified Anxiety Disorder; Unspecified Depressive Disorder; Borderline Intellectual Functioning; and Unspecified Neurocognitive Disorder (Provisional)." Dr. Duncan did not conduct a criminal responsibility

evaluation of petitioner and did not ask petitioner about the crime itself, clarifying in his deposition that he did not offer an opinion about "the extent that [her diagnoses] impacts * * * her abilities to form intent, her capacities to appreciate criminality to perform conduct." He also clarified that he did not opine that petitioner necessarily had a mental-health defense, just that it could have been explored and considered.

Petitioner also presented the declarations of two criminal defense attorneys, Russell Barnett and Bronson James. Barnett attested that, among other things, "[t]rial counsel must be adequately informed before making a tactical decision not to address information and cannot reasonably advise petitioner when counsel is not informed." He also stated that, "[i]f trial counsel had engaged in any investigation into [petitioner's] mental health history, her brain injury and mental impairment, it would undeniably have changed the trial approach and the conclusions of the finder of fact." Similarly, James attested that, among other things, "[i]f trial counsel would have engaged in any investigation into [petitioner's] mental health history[,] her brain injury and mental impairment[,] [it] may have changed the trial approach and, potentially, the conclusions of the trier of fact."

The state[2] presented a declaration from petitioner's lead trial counsel, and he also testified at the hearing. In addition to representing petitioner in the underlying case, lead counsel had also previously represented her on a felony criminal charge. He attested that, after many interactions with petitioner, he did not have any concern that she could not understand what he told her or that she was unable to aid and assist in her defense. He was aware of her opioid addiction and that she had "some mental health issues," such as anxiety, depression, and a personality disorder. He testified, however, that Dr. Harper did not diagnose petitioner with kleptomania, which causes impulsive stealing, because "she planned out and researched her thefts in order to be able to make money."

In addition to talking to petitioner, lead counsel also spoke with petitioner's counselor, Eby, and petitioner's

---

[2] For simplicity, we refer to defendant, the superintendent of Coffee Creek Correctional Facility, as "the state" throughout this opinion.

husband about her mental health and drug use and how they affected her. With that information, counsel "explained to petitioner both the defenses of guilty except for insanity (GEI) and diminished capacity, but she was opposed to pursuing any defense that relied on admitting that she killed the victim. She denied repeatedly that she had anything to do with the victim's death." Counsel did not believe that petitioner would cooperate with any defense in which trial counsel would have to admit that petitioner killed the victim or in which petitioner would admit to killing the victim. Thus, he believed that it would have been difficult or impossible to pursue such a defense on her behalf and, as a result, he "did not see any potential benefit to having a criminal responsibility exam conducted." He also attested that he would not have pursued a GEI or a diminished capacity defense, even with an exam to support it, unless petitioner admitted to killing the victim.

The post-conviction court denied relief, concluding that trial counsel was not inadequate and, even if counsel were inadequate, there was no resulting prejudice to petitioner. The court entered the following findings with respect to the claims that were based on allegations that trial counsel failed to investigate her mental illness, intellectual capacity, and drug dependence:

"G. H. I. J. K. L. O.    Pet[itioner] makes numerous claims about [her] trial attorney not fully investigating mental health and drug addiction issues. All of those claims fail. There is no allegation or evidence that pet[itioner] could not aid and assist. Attorney and pet[itioner] spoke about mental health defenses, but pet[itioner] steadfastly denied she killed the victim and was not willing to use those defenses which would mean admitting to the homicide. What use would it have been for the attorney to investigate those issues further? The attorney went with what pet[itioner] told him—that she didn't commit the homicide. There is also no expert opinion in this trial that pet[itioner] qualified for a GEI or diminished capacity defense.

"* * * * *

"N.    There is no proof that at the time of the homicide, pet[itioner] had any prescription for the drugs found in her possession."

On appeal, petitioner argues that the post-conviction court erred in rejecting her claims G., H., I., J., L., and N., set out above, based on its determination that trial counsel made a reasonable trial decision to adopt a theory of defense based on petitioner's denial that she killed the victim.[3] Petitioner asserts that counsel's selection of that theory was not based on an adequate investigation of petitioner's mental illness, intellectual capacity, and drug dependence at the time of the crime and, thus, counsel could not accurately advise petitioner or rely on petitioner's choice not to pursue certain defense theories. She argues that potential defenses that trial counsel could have pursued with petitioner after making an adequate investigation were the affirmative defenses of GEI, ORS 161.295,[4] or extreme emotional

———————

[3] Petitioner asserts in four assignments of error that her trial counsel were inadequate for (1) failing to "investigate petitioner's mental health and medical treatment," (2) failing to "obtain records regarding petitioner's treatment at 'Options for Southern Oregon' from 2003 until the date of her arrest," (3) failing to investigate petitioner's treatment at "'Pain Specialists of Southern Oregon,'" and (4) failing to "lay a proper foundation for Dr. Harper's testimony and to call Dr. Harper to discuss petitioner's mental health and addi[c]tion issues."

As noted, she argues that those assignments of error are based on the post-conviction court's rejection of her claims G., H., I., J., L., and N. Petitioner, however, combines her argument for all of those claims, framing it as a failure of trial counsel to adequately investigate her mental conditions and drug dependence, which rendered trial counsel unable to properly advise petitioner. Because we conclude that that argument, as framed, does not provide a basis for us to reverse the post-conviction judgment, we do not address whether that argument is properly encompassed by her claims as alleged in her post-conviction petition. *See Hale v. Belleque*, 255 Or App 653, 660, 298 P3d 596, *adh'd to on recons*, 258 Or App 587, 312 P3d 533, *rev den*, 354 Or 597 (2013) ("The allegations of the petition frame the issues that a post-conviction court can consider, and a petitioner who fails to raise a claim in a petition for post-conviction relief has waived it and is foreclosed from making arguments on claims not raised in the petition, *Bowen v. Johnson*, 166 Or App 89, 92, 999 P2d 1159, *rev den*, 330 Or 553 (2000), or that expand on the claims pleaded. *Leyva-Grave-De-Peralta v. Blacketter*, 232 Or App 441, 448-53, 223 P3d 411 (2009), *rev den*, 348 Or 114 (2010).").

[4] GEI is an affirmative defense. ORS 161.305. Under ORS 161.295:

"(1) A person is guilty except for insanity if, as a result of a qualifying mental disorder at the time of engaging in criminal conduct, the person lacks substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law.

"(2) As used in chapter 743, Oregon Laws 1971, the term 'qualifying mental disorder' does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct, nor does the term include any abnormality constituting solely a personality disorder."

disturbance, ORS 163.135,[5] or a general defense that her mental conditions or drug dependence prevented her from forming the requisite mental state at the time of the crime, using statutes such as ORS 161.125(1) or ORS 161.300.[6] That more general defense is generally referred to as a diminished-capacity or partial-responsibility defense. *See, e.g.*, *Cox v. Howton*, 268 Or App 840, 841 n 1, 343 P3d 677 (2015) (explaining that "[t]he inability to form the requisite mental state element of a charged crime is frequently referred to as diminished capacity"). Petitioner expressly disclaims that her post-conviction claims are premised on the basis that trial counsel was ineffective for failing to assert any of those defenses on her behalf, over her objection; instead, she seeks post-conviction relief based on the alleged failure to investigate.

We review the post-conviction court's denial of relief for legal error. In so doing, we accept "the court's implicit and explicit factual findings if there is evidence to support them." *Pike v. Cain*, 303 Or App 624, 632-33, 465 P3d 277

---

[5] ORS 163.135(1) (2017), *amended by* Or Laws 2019, ch 635, § 19, provides:

"It is an affirmative defense to murder for purposes of ORS 163.115(1)(a) that the homicide was committed under the influence of extreme emotional disturbance if the disturbance is not the result of the person's own intentional, knowing, reckless or criminally negligent act and if there is a reasonable explanation for the disturbance. The reasonableness of the explanation for the disturbance must be determined from the standpoint of an ordinary person in the actor's situation under the circumstances that the actor reasonably believed them to be. Extreme emotional disturbance does not constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

ORS 163.135(1) was amended in 2019 to conform its references to ORS 163.115 with the substantive amendments also made to that statute in 2019. Or Laws 2019, ch 635, § 19. As a result, we refer to the 2017 version of ORS 163.135, which references the version of ORS 163.115 under which petitioner was convicted.

[6] ORS 161.125(1) provides:

"The use of drugs or controlled substances, dependence on drugs or controlled substances or voluntary intoxication shall not, as such, constitute a defense to a criminal charge, but in any prosecution for an offense, evidence that the defendant used drugs or controlled substances, or was dependent on drugs or controlled substances, or was intoxicated may be offered by the defendant whenever it is relevant to negative an element of the crime charged."

ORS 161.300 provides that "[e]vidence that the actor suffered from a qualifying mental disorder is admissible whenever it is relevant to the issue of whether the actor did or did not have the intent which is an element of the crime."

(2020). "If the post-conviction court did not expressly make factual findings, and if there is evidence from which the facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the court's ultimate conclusion." *Flores-Salazar v. Franke*, 265 Or App 712, 713, 337 P3d 141 (2014), *rev den*, 357 Or 164 (2015).

Petitioner brought her post-conviction claims under both the Oregon and federal constitutions. In Oregon, under Article I, section 11, "[t]o be entitled to post-conviction relief based on inadequate assistance of counsel, a petitioner must show that counsel failed to exercise reasonable professional skill and judgment, and that the petitioner suffered prejudice as a result of counsel's inadequacy." *Johnson v. Premo*, 361 Or 688, 699, 399 P3d 431 (2017) (citing *Trujillo v. Maass*, 312 Or 431, 435, 822 P2d 703 (1991)). Similarly, under the Sixth Amendment, "to demonstrate ineffective assistance of counsel, a petition must show that trial counsel's performance 'fell below an objective standard of reasonableness' *** [and] he or she also must show that there was a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 700 (quoting *Strickland v. Washington*, 466 US 668, 688, 104 S Ct 2052, 80 L Ed 2d 674 (1984)). Because we conclude that it is dispositive, we address only the prejudice prong of petitioner's claim.[7]

Petitioner has framed her claims as based on trial counsel's failure to reasonably investigate her conditions, which resulted in trial counsel failing to properly advise her of her defense options based on those conditions. In the failure-to-investigate context, the Supreme Court has stated that the test for prejudice under Article I, section 11, is whether "there was more than a mere possibility" that counsel's failure to investigate in the ways alleged by petitioner "could have tended to affect the outcome of the [trial]." *Richardson v. Belleque*, 362 Or 236, 268, 406 P3d 1074 (2017). "[T]he assessment involves a sequential inquiry

---

[7] Petitioner has not made a separate prejudice argument under the Sixth Amendment to support her claim. Thus, we do not separately address that standard in our analysis.

into whether 'there was more than a mere possibility' that an adequate investigation would have yielded information that could have been used at the [trial] in a way that gave rise to 'more than a mere possibility' that the outcome of the proceeding could have been different as a result." *Monfore v. Persson*, 296 Or App 625, 636, 439 P3d 519 (2019) (quoting *Richardson*, 362 Or at 266-68 (internal quotation marks omitted)).

Because it is important to our analysis and to the parties' arguments, we emphasize that, here, the post-conviction court found that petitioner wished to maintain her innocence and refused to proceed with any mental-health defense because those defenses required admitting that she killed the victim.[8] Petitioner does not challenge those findings on appeal. Also, petitioner presented no evidence below that, even if she were presented with additional information and advice from counsel about defenses based on her mental illness, intellectual capacity, or drug dependence, she would have agreed to use such a defense.

On appeal, petitioner argues that what she might have agreed to do with correct advice does not matter because, under *Richardson*, all she had to show for the prejudice prong of her claim was that a reasonable investigation would have produced information that competent counsel could have used in a way that tended to affect the outcome of the case. She asserts that, here, a full investigation would have uncovered information that, in the words of Dr. Duncan, "raised strong questions about [petitioner's] mental state and capacities to form intent." That information, she asserts, could have been used by competent counsel to support a mental-health defense. In particular, petitioner argues that the information supports a diminished capacity defense, because it raises reasonable doubt about petitioner's

---

[8] As provided above, the post-conviction court found in its letter opinion:

"Attorney and pet[itioner] spoke about mental health defenses, but pet[itioner] steadfastly denied she killed the victim and was not willing to use those defenses which would mean admitting to the homicide. What use would it have been for the attorney to investigate those issues further? The attorney went with what pet[itioner] told him—that she didn't commit the homicide. There is also no expert opinion in this trial that pet[itioner] qualified for a GEI or diminished capacity defense."

capacity to form the required mental state at the time of the crime, which was indicted as an intentional murder.[9]

The state makes two main responses to petitioner's prejudice argument. First, the state argues that petitioner's prejudice argument fails because she presented no evidence that she would have agreed to pursue any mental-health or drug-dependence defenses had her trial counsel adequately investigated and presented her with information to support them. The state points out that, in a failure-to-advise claim, the petitioner must show that she would have changed her mind if she had been adequately advised, citing *Moen v. Peterson*, 312 Or 503, 824 P2d 404 (1991), and *Gable v. State of Oregon*, 353 Or 750, 305 P3d 85, *cert den*, 571 US 1030 (2013). Second, the state argues that petitioner cannot show prejudice, because none of the evidence she offered in support of her post-conviction claims would have been admissible at trial to support a GEI, extreme emotional disturbance, or diminished capacity defense.

Because we conclude that petitioner failed to demonstrate prejudice based on the first argument advanced by the state, we do not address the state's second argument. We begin our analysis with a discussion of *Richardson*, on which petitioner relies for her arguments, and *Moen* and *Gable*, on which the state relies for its arguments.

In *Richardson*, the issue was whether counsel conducted an inadequate investigation of the facts, particularly of the petitioner's juvenile background, to support counsel's strategic choice not to call an expert at the petitioner's sentencing hearing to rebut the state's expert's opinion that petitioner suffered from a personality disorder that qualified him for sentencing as a dangerous offender. 362 Or at 258. After concluding that counsel's investigation was constitutionally inadequate, the court addressed prejudice and determined that "it was more than a mere possibility that

---

[9] To the extent petitioner argued in reply and at oral argument that she also meets the test for prejudice because evidence of her mental conditions could have been used in mitigation at sentencing, we reject that argument as unpreserved. *See Hale*, 255 Or App at 660 ("Preservation principles apply in the context of post-conviction relief and, as a general rule, arguments not made to the post-conviction court in support of a claim will not be considered on appeal.").

competent defense counsel could have used the information from [the petitioner's expert's] report in ways that 'could have tended to affect' the outcome of the dangerous-offender hearing." *Id.* at 266. The court then discussed several ways counsel could have used the information directly or in cross-examination of the state's expert. *Id.* at 267.

*Richardson* involved a straightforward failure of trial counsel to fully investigate and discover the facts relevant to the strategy that counsel chose to pursue at petitioner's sentencing hearing. Petitioner's argument here is not so straightforward as the one presented in *Richardson*, because she has premised her claim on trial counsel's failing to properly *advise her* of her defense options after an adequate investigation. Thus, the state argues that *Moen* and *Gable* apply, cases which address failure-to-advise claims.

In *Moen*, the petitioner argued that his trial counsel was ineffective for failing to advise him of the possibility of a minimum sentence before he agreed to plead no contest. 312 Or at 505. The Supreme Court rejected the petitioner's argument that the failure to receive such advice rendered his sentence *per se* unlawful. The court stated:

> "There are many reasons why a criminal defendant might wish to make a plea agreement, even though aware of the potential imposition of a minimum sentence. The possibility of a minimum sentence is not necessarily determinative in a criminal defendant's decision to enter a plea. And, if a petitioner would not have changed the plea of guilty or no contest even with knowledge of a possible minimum sentence, there is no reason to set aside the conviction."

*Id.* at 512. Thus, the court concluded that the petitioner had to show that, had he received correct advice, he would not have pleaded no contest. *Id.* at 513.

In *Gable*, the petitioner argued that his trial counsel was ineffective for failing to inform him "that he had the right to object, on *ex post facto* grounds, to the application of a new sentencing law to his case." 353 Or at 752. It was undisputed that trial counsel should have so informed the petitioner; the question before the court was whether the petitioner was prejudiced by counsel's failure to do so. The

post-conviction court found that petitioner was not credible and determined that, as a factual matter, petitioner did not establish that he would have decided to not waive his *ex post facto* rights had he been given the advice that he could raise an *ex post facto* objection. *Id.* at 757. On appeal, the petitioner argued that the post-conviction court erred in that respect. He asserted that, because he did not receive proper advice, the post-conviction court engaged in mere speculation as to what he would have done with proper advice and that, without proper advice, his sentence was unlawful. *Id.* at 762. The Supreme Court rejected that argument, because it assumed the very issue in contention, that is, whether petitioner would have waived his *ex post facto* rights, even if he had received proper advice. Because there could be many reasons why the petitioner could elect to waive those rights, the court concluded that the controlling question, "as in *Moen*, is whether the receipt of correct advice about a possible *ex post facto* objection would have made a difference to petitioner in this case." *Id.* at 763.

The significant feature of *Moen* and *Gable* that distinguishes those cases from the discussion of prejudice in *Richardson* is that *Moen* and *Gable* involved a failure to investigate and advise the petitioner about decisions over which the petitioner had sole control—whether to waive constitutional rights—whereas *Richardson* involved the failure to investigate a chosen trial strategy, which trial counsel could make the decision to pursue. To prove prejudice in the former context, *Moen* and *Gable* require evidence that the petitioner would have made a different decision if the petitioner had received the correct advice from counsel. Applying that distinction to this case, whether petitioner had to show whether she would have changed her mind upon receiving better-informed advice from counsel based on an adequate investigation of her mental conditions and drug dependence—as required by *Moen* and *Gable*—turns on whether petitioner had control of the decision to pursue a GEI, extreme emotional disturbance, or diminished capacity defense, or whether that was a trial strategy decision that trial counsel could pursue even in light of petitioner's objective to maintain her innocence in any involvement in the death of the victim.

Petitioner acknowledges that trial counsel could not have raised an affirmative defense of GEI or extreme emotional disturbance over her objection or admitted that she killed the victim over her objection. *See McCoy v. Louisiana*, ___ US ___, 138 S Ct 1500, 1508-09, 200 L Ed 2d 821 (2018) (a criminal defendant has a Sixth Amendment right to decide that the objective of the defense is to assert innocence; "[w]hen a client expressly asserts that the objective of *'his* defence' is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt." (Emphasis in original.));[10] *Thompson v. Cain*, 295 Or App 433, 435, 433 P3d 772 (2018) ("When the defendant's fundamental objective is to maintain innocence regardless of the potential outcome, counsel may not concede guilt [to a lesser-included offense] without the affirmative consent of the defendant."); *Pratt v. Armenakis*, 199 Or App 448, 463, 112 P3d 371, *adh'd to on recons*, 201 Or App 217, 118 P3d 821 (2005), *rev den*, 340 Or 483 (2006) (counsel was not constitutionally inadequate for failing to raise a GEI defense where the petitioner told counsel "he did not want to assert an 'insanity' defense," relying on cases that hold that a court cannot find a defendant guilty except insane over the defendant's objection); ORS 163.135(1) (2017) ("It is an affirmative defense to murder for purposes of ORS 163.115(1)(a) that the homicide was committed under the influence of extreme emotional disturbance."). Based on petitioner's acknowledgement, with which we agree, petitioner cannot prove prejudice in this case based on a claim that counsel could have used the information from an adequate investigation to pursue a GEI or extreme emotional disturbance defense. In light of petitioner's objective to maintain her complete innocence in the victim's death,

---

[10] The United States Supreme Court also suggested, however, that "counsel could, if consistent with providing effective assistance, focus his own collaboration on urging that [the defendant's] mental state weighed against conviction." *McCoy*, 138 S Ct at 1509. *But see id.* at 1514 (Alito, J., dissenting) ("If [counsel] had conspicuously refrained from endorsing petitioner's story and had based his defense solely on petitioner's dubious mental condition, the jury would surely have gotten the message that [counsel] was essentially conceding that petitioner killed the victims."). That statement, however, does not hold that such a defense is consistent with providing effective assistance, nor does the Court explain how such a defense could be mounted without conceding guilt of a lesser-included offense in an intentional murder case. We thus do not consider it helpful to our analysis.

competent counsel could not pursue those defenses without her consent, and petitioner presented no evidence that she would have changed her mind about proceeding with such defenses had trial counsel given her advice based on an adequate investigation.

Petitioner, however, also argues that competent defense counsel could have used evidence of her mental illness, intellectual disability, or drug dependence to raise reasonable doubt about her ability to form the requisite intent at the time of the crime without conceding that petitioner killed the victim. Thus, petitioner argues that the information about her conditions, particularly Dr. Duncan's statement of the questions raised about her mental capacity to form intent, could have been used by competent counsel at trial in a way that could have affected the outcome of her trial. As explained below, we reject that argument because petitioner has not shown that she met the test for prejudice set out in *Richardson*.

In recent post-conviction cases, we have emphasized what constitutionally adequate counsel is required to do in light of a client's trial objectives. In *Thompson*, we addressed whether counsel was ineffective for conceding that the petitioner was guilty of lesser-included offenses of some of the charged crimes, based on a defense that the petitioner had the sexual encounters with the minor victim, but that those encounters were consensual and the victim was not physically helpless. 295 Or App at 436. The petitioner had not explicitly objected to the strategy with defense counsel but had maintained his complete innocence. We stated that,

> "after *McCoy*, even if a concession is not tantamount to a plea for purposes of requiring counsel to obtain a petitioner's express consent, a petitioner's fundamental objective to assert innocence is reserved to the client in the same way as the right to plead guilty, and that autonomy to direct the defense cannot be usurped by defense counsel."

*Id.* at 442. We further explained that "the defendant must be informed of counsel's proposed strategy that requires the concession of guilt, but when such a strategy conflicts with defendant's fundamental expressed objective to maintain innocence, trial counsel 'may not steer the ship the other

way.'" *Id.* (quoting *McCoy*, 138 S Ct at 1509). We vacated and remanded the case for the post-conviction court to make findings of fact about the petitioner's trial objective, because it had not done so.

In *Evans v. Nooth*, 300 Or App 331, 452 P3d 1026 (2019), the petitioner argued that his appellate counsel on his direct appeal was constitutionally inadequate for failing to challenge all of the counts of which he was convicted. The petitioner did not present any evidence regarding his interactions with his appellate counsel or his objectives for the appeal, so he advanced an argument that an appellate counsel is categorically inadequate for failing to challenge every conviction. *Id.* at 338-39. In addressing that claim, we emphasized what decisions the client has control over, and what decisions are left to counsel:

> "While there are a myriad of tactical decisions in how to best conduct litigation that are properly the province of the attorney, deciding on the broader objectives of litigation is the client's decision to make. *The lawyer is obligated to make tactical decisions that work towards those objectives, not against them.*
>
> "As such, a petitioner cannot prevail on a claim for post-conviction relief if the attorney merely carried out tactical decisions at the directions of the client in furtherance of the client's goals for litigation—goals that the client now regrets."

*Id.* at 337-38 (emphasis added). We thus concluded that without evidence of the petitioner's appellate objectives, the petitioner was not entitled to relief.

Those cases establish that competent defense counsel must support a client's broad trial objectives, particularly the objective to maintain complete innocence. The only evidence here is that petitioner's stated trial objective was to maintain her innocence of having any role in the victim's death and that petitioner has not presented any evidence that pursuing a diminished capacity defense would have been consistent with her trial objectives. A diminished capacity defense is based on demonstrating that the defendant did not have the capacity to form the required criminal intent, typically because of a mental disorder or drug

use, at the time that the defendant engaged in the conduct underlying the charge. *See, e.g.*, *Cox*, 268 Or App at 841 n 1 ("The inability to form the requisite mental state element of a charged crime is frequently referred to as diminished capacity."). Petitioner argues here that such a defense could have been presented without implicating her in killing the victim. However, petitioner has not presented any argument that demonstrates how competent counsel could use the evidence petitioner submitted in the post-conviction court in a way that could affect the outcome at trial without crossing the line into conceding that petitioner killed the victim; petitioner only speculates that it could be done.

In addition, petitioner did not present evidence that she did not have any capacity to form an intentional mental state at the time of the crimes. In his deposition, Dr. Duncan, who examined petitioner for purposes of the post-conviction proceeding, despite raising "strong questions" in his report about her capacity to form intent, testified that he was not offering an opinion about "the extent that [her diagnoses] impacts on her abilities to form intent." By contrast, petitioner's trial counsel testified that Dr. Harper, who examined petitioner before the underlying trial, did not diagnose petitioner with kleptomania, which causes impulsive stealing, because "she planned out and researched her thefts in order to be able to make money." That evidence supports the post-conviction court's finding that "[t]here is also no expert opinion in this trial that pet[itioner] qualified for a GEI or diminished capacity defense."

We conclude that, in the absence of the context of admitting, either explicitly or implicitly, that petitioner was involved in the victim's death, which is a decision over which petitioner had control, it is speculation, and not more than a "mere possibility," that an adequate investigation would have yielded information that competent counsel could have used in a way that had more than a "mere possibility" to affect the outcome of trial. Additionally, because petitioner presented no evidence that she would have changed her mind about her defense objectives if trial counsel had advised her after conducting an adequate investigation, petitioner has not shown that she was prejudiced by trial counsel's failure

to so advise her. Accordingly, we affirm the post-conviction court's denial of relief.

Affirmed.